ELAINE E. LÓPEZ TORRES, recurrida, *v.* JUAN A. GONZÁLEZ VÁZ-QUEZ, peticionario.

*Número:* CC-2003-473          *Resuelto:* 12 de noviembre de 2004

*Antonio E. Arraiza* y *Carlos Gallisá,* abogados de la parte peticionaria; *Antonio Corretjer Piquer* y *Víctor M. Rivera Torres,* abogados de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Para fines del inventario y eventual liquidación de una sociedad legal de gananciales, debemos precisar si los ingresos, las bonificaciones y los incentivos derivados de un contrato de servicios profesionales, suscrito por uno de los ex cónyuges antes de contraer matrimonio, se consideran bienes privativos o gananciales.

# I

Luego de advenir final y firme nuestra decisión en *López v. González*, 151 D.P.R. 225 (2000), en la cual anulamos las capitulaciones matrimoniales suscritas por el Sr. Juan A. González Vázquez y la Sra. Elaine E. López Torres, ésta solicitó del Tribunal de Primera Instancia que iniciase el trámite de inventario y liquidación de los bienes habidos en su matrimonio con el señor González Vázquez. En lo pertinente, requirió que fueran objeto de inventario y eventual liquidación los ingresos, las bonificaciones (en particular un bono por firmar (*signing bonus*)) y los incentivos derivados de un contrato de servicios profesionales suscrito entre el señor González Vázquez y el equipo de béisbol profesional "Los Vigilantes de Texas" el 31 de marzo de 1994, en el estado de Texas. Mediante dicho contrato —denominado Contrato Uniforme para Jugadores de Béisbol Profesional-Liga Americana, y su complemento, Condiciones Especiales al Contrato Uniforme para Jugadores de Béisbol Profesional—[1] el señor González Vázquez se obligó a jugar béisbol profesional con la organización de los Vigilantes de Texas, durante las temporadas de 1994 a 1998, a cambio de devengar una suma líquida de dinero ascendente a $28,700,000.[2] Adicional a ello, recibiría un bono

---

[1] Traducción de su versión original en inglés: "Uniform Player's Contract" y "Special Covenants to the Uniform Player's Contract".

[2] El señor González Vázquez recibiría el siguiente salario por temporada:

| | |
|---|---|
| Temporada 1994 | $3,000,000.00 |
| Temporada 1995 | $5,000,000.00 |
| Temporada 1996 | $6,700,000.00 |
| Temporada 1997 | $7,000,000.00 |
| Temporada 1998 | $7,000,000.00 |
| Temporada 1999 | $7,250,000.00 |
| Temporada 2000 | $7,500,000.00 |

Véase Apéndice, pág. 297.

Es preciso señalar que los sueldos, que serían devengados durante las temporadas 1999 y 2000, estaban sujetos a que el señor González Vázquez ejercitara la opción de extender su contrato.

por firmar (*signing bonus*) de $2,000,000.([3]) En su solicitud, la señora López Torres adujo que, si bien era cierto que el señor González Vázquez había suscrito su contrato con los Vigilantes de Texas el 31 de marzo de 1994, *ocho días antes de contraer matrimonio con ella*,([4]) el pacto en cuestión se hizo efectivo el 19 de abril de 1994, estando ya casada con González. En esta fecha fue cuando el Presidente de la Liga Americana de Béisbol Profesional aprobó el contrato, condición exigida para que cobrara eficacia.([5]) Por consiguiente, a juicio de la señora López Torres, toda remuneración derivada de éste debía considerarse un bien ganancial.

En oposición, el señor González Vázquez negó el carácter ganancial del referido contrato. Sostuvo que se firmó con anterioridad a la fecha del matrimonio, por lo que, conforme a lo dispuesto en el Art. 1302 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3642, los ingresos, así como cualquier bonificación recibida, eran bienes privativos por constituir créditos que surgieron antes de su matrimonio con la señora López Torres.([6])

---

([3]) El bono por firmar sería desembolsado de la manera siguiente: $500,000 diez días después de la aprobación del contrato por el Presidente de la Liga Americana de Béisbol Profesional; $500,000 el 1ro de julio de 1994 y $1,000,000 el 31 de diciembre de 1995.

([4]) Las partes, domiciliadas y residentes en Puerto Rico, contrajeron matrimonio el 8 de abril de 1994. Se divorciaron el 7 de agosto de 1997.

([5]) Véase la parte final del "Contrato Uniforme" la cual dispone:

"The Special Covenants are set forth in the attaches addendum. The attached addendum is hereby made part of this contract."

"Approval

"*This Contract or any supplement here to shall not be valid or effective unless and until approved by the League President.*" (Énfasis suplido.) Apéndice, pág. 310.

De otra parte, las Cláusula XVI de las Condiciones Especiales al Contrato Uniforme para Jugadores de Béisbol Profesional establece que:

"XVI. Effective Date Of Contract

"*This Contract, and each of its terms and conditions, shall become effective upon approval of this Contract by the President of the American League of Professional Baseball Clubs.*" (Énfasis suplido.) Apéndice, pág. 304.

([6]) En lo pertinente, el Art. 1302 de nuestro Código Civil, 31 L.P.R.A. sec. 3642, establece:

Luego de varios incidentes procesales, entre los cuales se destaca el nombramiento de un contador partidor encargado de determinar, precisar y evaluar los bienes que se han de dividir y liquidar, el Tribunal de Primera Instancia dictó sentencia. Resolvió que por estar el contrato sujeto a una condición suspensiva —tanto al amparo de la doctrina civilista como de la común angloamericana—([7]) su validez se configuró el 19 de abril de 1994, cuando fue aprobado por el Presidente de la Liga Americana de Béisbol Profesional. Por consiguiente, determinó que los ingresos, las bonificaciones y los incentivos derivados de éste eran gananciales. Oportunamente, el señor González Vázquez solicitó la reconsideración, la cual fue denegada.

No conforme, y bajo fundamentos similares a los expuestos ante el foro de instancia, el señor González Vázquez acudió en *certiorari* al antiguo Tribunal de Circuito de Apelaciones (Tribunal de Apelaciones). Dicho foro denegó el auto solicitado y, en consecuencia, sostuvo el dictamen emitido por el Tribunal de Primera Instancia.

Insatisfecho, el señor González Vázquez acudió ante nos. En síntesis, sostuvo que el foro apelativo intermedio erró al concluir que el contrato en controversia advino eficaz el 19 de abril de 2004 (fecha en que el Presidente de la Liga Americana lo firmó) y no el 31 de marzo de 2004 (fecha del otorgamiento). De igual manera señaló que dicho foro incidió al determinar que las partidas derivadas del contrato eran bienes gananciales. Acordamos expedir. Oportunamente, la señora López Torres presentó su ale-

---

"Siempre que pertenezca a uno de los cónyuges una cantidad o crédito pagadero en cierto número de años, no serán gananciales las sumas que se cobren en los plazos vencidos durante el matrimonio, sino que se estimarán capital del marido o de la mujer, según a quien pertenezca el crédito."

([7]) Al amparo de la figura del *conditions precedent*, los contratantes pueden acordar que un contrato no tenga validez, no surta efectos ni se convierta en obligatorio, como aquí, hasta que un tercero lo apruebe. Las partes que la utilizan no incurren en incumplimiento capaz de ser compelido por un tribunal, ni el contrato adquiere validez o efectividad antes de que se cumpla esa condición. 13 *Willinston on Contracts* Sec. 38.7, págs. 394–398 (1990); 8 *Corbin on Contracts rev. ed.* Sec. 30.7, págs. 11–15 (1999).

gato en oposición. Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

A. En primera instancia —y como punto de partida para determinar la naturaleza, privativa o ganancial, de los ingresos, las bonificaciones y los incentivos derivados del contrato suscrito por el señor González Vázquez y los Vigilantes de Texas— es menester dirimir la fecha exacta cuando el referido contrato cobró eficacia. Demás está decir que, por tratarse aquí de un pleito sobre liquidación de una sociedad de gananciales surgida al amparo de las leyes de Puerto Rico, la interpretación de los derechos y las obligaciones de las partes se rigen por nuestro Código Civil.

Así aclarado, repasamos los principios estatutarios y jurisprudenciales, vigentes en nuestra jurisdicción, que gobiernan el asunto.

B. Como se sabe, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 L.P.R.A. sec. 2992. Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes, y deben cumplirse de acuerdo con éste. Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994; *Mercado, Quilichini v. U.C.P.R.*, 143 D.P.R. 610 (1997).

En nuestra jurisdicción se reconoce el principio de autonomía contractual entre las partes contratantes. A su amparo, éstas pueden establecer los pactos, las cláusulas y las condiciones que tengan por convenientes, siempre que no sean contrarias a las leyes, a la moral y al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372; *S.L.G. Irizarry v. S.L.G. García*, 155 D.P.R. 713 (2001). El mencionado principio va atado al axioma jurídico de que el

mero consentimiento obliga, pues una vez perfeccionado un contrato en que medie el consentimiento de las partes, éstas se obligan desde ese momento no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375; *Jarra Corp. v. Axxis Corp.*, 155 D.P.R. 764 (2001).

■ Con frecuencia sucede que las partes, puestas en función de contratantes, someten el cumplimiento de la obligación a la realización futura de un hecho o a la llegada de determinado día. Al así actuar, están modificando la normalidad en el cumplimiento, pues es regla general reconocida aquella que postula el cumplimiento de la obligación desde que ésta se constituye. Reconociendo esta modalidad en las relaciones jurídicas de las personas solemos hablar de obligaciones puras, condicionales y a plazos. Véase J.R. Vélez Torres, *Derecho de Obligaciones*, 2da ed., San Juan, Ed. U.I.A.P.R., 1997, págs. 135–142. Según el tratadista Puig Brutau, en su obra *Fundamentos de Derecho Civil*, 3ra ed. rev., Barcelona, Ed. Bosch, T. I, Vol. II, 1985, pág. 81:

> ...[las obligaciones] *Puras* son las exigibles desde el instante mismo de quedar constituida la relación obligatoria; las *condicionales* son aquéllas cuya eficacia depende de un acontecimiento incierto, y *a plazo* o a *término* las que dejan establecida en firme la prestación sin que pueda exigirse todavía en el momento de quedar constituida la relación obligatoria. (Énfasis en el original.)

■ En lo que aquí concierne, dentro de las obligaciones condicionales se encuentran las que están sujetas a una condición suspensiva, a cuyo cumplimiento se subordinan los efectos de un acto jurídico por voluntad de los contratantes. A tales efectos, el Art. 1067 de nuestro Código Civil dispone que "[e]n las obligaciones condicionales la adquisición de los derechos así como la resolución o pér-

dida de los ya adquiridos, dependerá del acontecimiento que constituya la condición". 31 L.P.R.A. sec. 3042. *"Si la condición se cumple, la obligación surge .... Si ... no se realiza, el vínculo de derecho no llega a aparecer."* (Énfasis suplido.) *Meléndez v. Jiménez Realty, Inc.*, 98 D.P.R. 892, 897 (1970), citando a J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 1, pág. 367. Véase, además, *Jarra Corp. v. Axxis Corp.*, supra, pág. 773.

■     Así pues, cumplida la condición, sus efectos dependerán del tipo de obligación de que se trate, a saber: de dar, de hacer, o no hacer. *En cuanto a las obligaciones de dar, una vez cumplida la condición, los efectos de la obligación se retrotraen al día de su constitución. En cuanto a las obligaciones de hacer o no hacer, la retroactividad será consecuencia, en cada caso, de un dictamen judicial.* Art. 1073 del Código Civil, 31 L.P.R.A. sec. 3048. Véanse, además: Puig Brutau, *op. cit.*, págs. 90–94; L. Díez-Picazo y A. Gullón Ballesteros, *Sistema de Derecho Civil*, 4ta ed. reimp., Madrid, Ed. Tecnos, 1984, Vol. II, págs. 221–222; I. Sierra Gil de la Cuesta, *Comentario al Código Civil*, Barcelona, Ed. Bosch, 2000, T. VI, págs. 178–181.

A la luz de este marco jurídico, disponemos de la controversia ante nos.

C.     Es un hecho incontrovertido que la validez del contrato de servicios profesionales, suscrito entre el señor González Vázquez y los Vigilantes de Texas, se condicionó a que fuese aprobado por el Presidente de la Liga Americana de Béisbol Profesional. Así claramente se desprende de la parte dispositiva del "Contrato Uniforme" y de la Cláusula XVI de las Condiciones Especiales al Contrato Uniforme para Jugadores de Béisbol Profesional.[8] Al subordinarse los efectos de un acto jurídico por voluntad de los contratantes a la ocurrencia de un hecho incierto, se

---

[8] Véase el escolio 6.

constituyó una obligación sujeta a una condición suspensiva. Cumplida la condición el 19 de abril de 1994, la obligación pactada es totalmente exigible conforme al derecho.

■   Como la obligación contraída por el señor González Vázquez constituye una obligación de "hacer", se exige entonces, conforme lo dispone el Art. 1073 del Código Civil, *supra*, determinar si los efectos de la obligación contratada se retrotraerán al día de su constitución. La tarea requiere indagar la voluntad de los contratantes, atendiendo principalmente a sus actos anteriores, coetáneos y posteriores al otorgamiento del contrato, así como a la ocasión, las circunstancias, las personas y el acuerdo que se intentó llevar a cabo. Art. 1234 del Código Civil, 31 L.P.R.A. sec. 3472; *Marcial v. Tomé*, 144 D.P.R. 522 (1997); *Unisys v. Ramallo Brothers*, 128 D.P.R. 842 (1991); *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161, 173 (1989); *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 70 (1983); *Coop. La Sagrada Familia v. Castillo*, 107 D.P.R. 405, 417 (1978).

Bajo este prisma, al examinar detenidamente las circunstancias particulares de este caso así como los términos y las condiciones del contrato, la conclusión obligada es que existen claros indicios en la conducta del señor González Vázquez y de los Vigilantes de Texas, anteriores a la fecha en que el Presidente de la Liga Americana firmó el contrato en cuestión, que nos llevan a determinar que sus efectos, una vez cumplida la condición, se retrotraen a la fecha cuando se firmó, 31 de marzo de 1994. En apoyo de esta conclusión, advertimos que diecisiete días antes del Presidente de la Liga de Béisbol Profesional haber firmado el contrato, es decir, el 2 de abril de 1994, el señor González Vázquez comenzó a prestar sus servicios como jugador de los Vigilantes de Texas; quince días antes, el 4 de abril de 1994, recibió la suma de $500,000 como bonificación por firmar (*signing bonus*), y un día antes, el 18 de abril de

1994, recibió su primera paga por jugar la primera quincena del mes.

" 'La vida del derecho, la forman los hechos.' " *Casiano Jr. v. Borintex Mfg. Corp.*, 133 D.P.R. 127, 132 (1993). En justicia, no podemos ignorar que la verdadera intención de las partes contratantes fue que el contrato tuviese efectos desde el mismo día en que se suscribió. Por ende, aun cuando fue firmado por el Presidente de la Liga Americana de Béisbol Profesional varios días después de haberse otorgado, es forzoso concluir que sus efectos se retrotraen a la fecha cuando se constituyó, es decir, al 31 de marzo de 1994.

## III

Adjudicado que el contrato cobró eficacia el 31 de marzo de 1994, fecha para la cual el señor González Vázquez no se encontraba casado aún con la señora López Torres, resta por determinar si los ingresos, bonificaciones e incentivos derivados de éste son bienes privativos o gananciales. Según indicado, el señor González Vázquez argumenta que tales bienes son privativos. Invoca el Art. 1302 del Código Civil, *supra*, y sostiene que los pagos pactados contractualmente, así como el bono por firmar (*signing bonus*) que recibió, no pueden considerarse un sueldo, sino créditos que surgieron con anterioridad a su matrimonio con la señora López Torres. No nos convence.

■ En nuestra jurisdicción *se reputan gananciales los bienes obtenidos por la industria, el sueldo o el trabajo de los cónyuges*, o de cualquiera de ellos, y los frutos, las rentas o los intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los privativos. Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641; *Pujol v. Gordon*, 160 D.P.R. 505 (2003).

■ Por *industria* se entiende cualquier actividad

de los cónyuges, o de cualquiera de ellos en particular, capaz de obtener un beneficio o ganancia, y siempre que la actividad no pueda catalogarse como trabajo en el sentido usual de este vocablo. La industria es una obra de habilidad o destreza. Por *trabajo* se entiende cualquier actividad humana capaz de producir unos rendimientos económicos.

> Comprende tanto el trabajo manual como el intelectual, el ejercicio de una profesión u oficio, *como la práctica de un arte o deporte que lleve consigo una compensación económica en forma de sueldo o salario,* o cualquier retribución como puede ser un premio o recompensa. *El empleo, función o cargo, como hemos visto, podrá tener carácter privativo ... pero el rendimiento económico siempre será ganancial ....* (Énfasis suplido.) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales,* 2da ed., Madrid, Ed. Rev. Der. Privado, 1999, T. VIII, Vol. II, págs. 153–157.

En fin, tal como lo expresáramos en *García v. Montero Saldaña,* 107 D.P.R. 319, 330–331 (1978),

> "las locuciones industria, sueldo y trabajo ... [contenidas en el segundo inciso del Art. 1301 del Código Civil comprenden] todas las formas de retribuir la actividad productora del hombre, y todo ello quiere que se aporte al caudal común de los gananciales, ya se trate de trabajo manual o intelectual en todas sus manifestaciones de utilidad económica". (Énfasis suprimido.) Citando a A. Borrell y Soler, *Derecho Civil Español,* Barcelona, Ed. Bosch, 1955, T. IV, pág. 427.

Examinado el contrato de servicios profesionales objeto de litigio, en todos sus términos y condiciones, procede concluir que éste versa sobre el trabajo de González Vázquez. Como tal, los ingresos derivados del contrato, *durante la vigencia del matrimonio con la señora López Torres,* son de carácter ganancial y están sujetos a inventario y la eventual liquidación.(9)

---

(9) Es menester señalar que, en el proceso de inventario y de liquidación de los bienes gananciales, el foro de instancia deberá considerar cualquier gasto o desembolso, si alguno, efectuado por cualquiera de los cónyuges en beneficio de la sociedad legal de gananciales.

■ Ahora bien, en vista de que las partes se divorciaron varios años antes de que se venciese el contrato, conviene señalar que los ingresos derivados, *luego de decretado el divorcio por sentencia final y firme*, son de carácter privativo. Art. 105 del Código Civil, 31 L.P.R.A. sec. 381; *Díaz v. Alcalá*, 140 D.P.R. 959, 972 (1996); *García v. Montero Saldaña*, supra, págs. 330–331. Ello es consecuencia de la norma reiterada en cuanto a que la sociedad legal de gananciales concluye una vez el matrimonio es disuelto por divorcio. *Montalván v. Rodríguez*, 161 D.P.R. 411 (2004); *Díaz v. Alcalá*, supra, pág. 972, *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219, 228 (1984); *García López v. Méndez García*, 102 D.P.R. 282, 395 (1974).

■ De igual modo, el bono por firmar —en su totalidad de $2,000,000— es un bien privativo del señor González Vázquez. En este tipo de bonificación, *el acto de firmar*, celebrado antes del matrimonio, es el único requisito necesario para obtener de manera instantánea el desembolso de la cantidad pactada como bono. I *Corbin on Contracts* 391–392 (1993). Habiéndose pactado que el bono en cuestión se pagaría en plazos (a saber: $500,000 diez días después de la aprobación del contrato por el Presidente de la Liga Americana de Béisbol Profesional; $500,000 el 1 de julio de 1994 y $1,000,000 el 31 de diciembre de 1995), se generó un crédito a favor del señor González Vázquez que no goza de naturaleza ganancial aun cuando venza durante el matrimonio. Como es sabido, siempre que pertenezca a uno de los cónyuges una cantidad o un crédito pagadero en cierto número de años, no serán gananciales las sumas que se cobren en los plazos vencidos durante el matrimonio, sino que se estimarán como capital privativo. Art. 1302 del Código Civil, *supra*.

## IV

Por los fundamentos expuestos en la opinión que antecede, *se modifica el dictamen emitido por el Tribunal de Apelaciones en aquella parte que dispuso que el contrato objeto de litigio advino eficaz el 19 de abril de 2004, fecha cuando el Presidente de la Liga Americana lo firmó, y no el 31 de marzo de 2004, fecha cuando se otorgó, en lo relativo al carácter ganancial del bono por firmar. En lo demás, confirmamos. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López no intervino.