ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MAXIMILIAN FIEGE<br><br>Apelado<br><br>v.<br><br>JOHN RODRÍGUEZ, KATEENA RODRÍGUEZ y la Sociedad Legal de Gananciales por Ellos Compuesta; CHARLES PETER RAFFERTY y su esposa BERNADINE MICHELLE RAFFERTY y la Sociedad Legal de Gananciales por Ellos Compuesta<br><br>Apelantes | KLAN202301006 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: FA2022CV00303<br><br>Sobre: Incumplimiento de Contrato y Daños Interferencia Torticera con Relación Contractual |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2023.

John Rodríguez, Kateena Rodríguez y la Sociedad legal de bienes gananciales compuesta por ambos, (en adelante "Rodríguez", Apelantes o Demandados) nos solicitan la revisión y revocación de la Sentencia Parcial Final emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante TPI) el 5 de octubre, notificada el 10 de octubre de 2023. Mediante esta, el foro primario declaró *Con Lugar* la solicitud de sentencia sumaria de la parte demandante y en su consecuencia, decretó que los aquí apelantes incumplieron con el contrato de compraventa perfeccionado con la parte demandante.

Por los fundamentos que exponemos a continuación, revocamos la sentencia apelada.

**I.**

El 25 de marzo de 2022 el señor Maximilian Fiege presentó una demanda de incumplimiento de contrato y daños contra John Rodríguez, Kateena Rodríguez y la Sociedad legal de bienes gananciales compuesta por ambos. La demanda fue enmendada el 11 de mayo de 2022. En la reclamación el señor Fiege alegó, en síntesis, que los demandados Rodríguez eran los dueños de un apartamento localizado en el Condominio Ocean Plaza, en Luquillo y lo pusieron en venta en las redes sociales y otros. Que el 15 de marzo de 2022, vio el apartamento, se interesó y le envió por correo electrónico una oferta por $290,000.00 en efectivo para la compraventa. Adujo que ese mismo día, a eso de las 8:52pm, Rodríguez aceptó la oferta del demandante, mediante el envío de un correo electrónico en respuesta al suyo. Alegó que desde el momento en que Rodríguez aceptó la oferta de compra se perfeccionó un contrato entre las partes de forma pura, simple y voluntaria. Agregó que el 16 de marzo de 2022, Rodríguez, en respuesta a un mensaje de texto del Demandante, Rodríguez le informó que estaría comunicándose con este más tarde esa noche, puesto que tenía otros compradores interesados a los cuales le iba a mostrar el apartamento. Aseveró que el día siguiente, Rodríguez le informó que había sacado el Apartamento de los listados ("listings") en los sitios que lo había colocado para la venta, puesto que un comprador diferente le había dado un depósito y oferta de compra superior a la del demandante. Mencionó que el 2 de abril de 2022, Rodríguez le vendió el apartamento a otra persona de nombre Charles Peter Rafferty y a su esposa. Por entender que Rodríguez violentó el contrato reclamó daños estimados en $300,000, más la suma de $10,000 de honorarios de abogado por incumplimiento y temeridad.

El 15 de junio de 2022, Rodríguez contestó la demanda enmendada. En esencia alegó que el demandante omitió un elemento esencial de la contratación. Sostuvo que al mostrarle la propiedad se le informó que, de interesar perfeccionar la oferta, debería consignar un depósito de dos mil dólares y entregar un acuerdo de compraventa firmado (Sellers buyer agreement). Aseveró que se le explicó al demandante que la propiedad no saldría del mercado hasta que se completaran esos pasos. Sostuvo que el demandante no cumplió con la contraprestación requerida para perfeccionar el contrato. En las defensas afirmativas reiteró que el demandante conocía que para perfeccionar el contrato venía obligado a entregar un depósito no menor de $2,000 y firmar un acuerdo de compra/venta, a los fines de poder requerir que la propiedad saliera del mercado, lo que no hizo, por lo que el contrato no quedó perfeccionado.

Luego de otros asuntos procesales que no vienen a la línea del relato, el 16 de agosto de 2023 el demandante presentó una solicitud de *Sentencia Sumaria Parcial*. En esta incluyó, entre otras, copia de correos electrónicos enviados entre las partes y mensajes de texto. En la solicitud de sentencia sumaria, expuso catorce (14) hechos como no controvertidos. Entre ellos, expresó que el 15 de marzo de 2022 el señor Rodríguez le mostró el Apartamento al señor Fiege, y ese mismo día, a eso de las 8:30pm, el señor Fiege envío por correo electrónico al señor Rodríguez, una oferta escrita para la compraventa del Apartamento, en efectivo, por la cantidad de doscientos noventa mil dólares ($290,000.00). Mencionó que ese mismo, 15 de marzo de 2022, a eso de las 8:52pm, el señor Rodríguez aceptó la oferta escrita del señor Fiege, mediante el envío de un correo electrónico en respuesta al suyo. Alegó que las partes llegaron a

un acuerdo para la compraventa del Apartamento y que el señor Rodríguez incumplió con el acuerdo perfeccionado al no honrar el acuerdo de compraventa.[1]

El 18 de septiembre de 2023 los demandados Rodríguez presentan su *Moción en oposición a sentencia sumaria*. Para cada hecho propuesto, explicaron si estaba o no controvertido. En especial aseveraron que el demandante reconoció en el documento de oferta que existían elementos adicionales requeridos para perfeccionar la contratación y citó lo siguiente del documento suscrito por el demandante:

> "To be able to move this quickly, I will need to move fast and have everything aligned. I am respectfully requesting an answer as soon as possible, preferably by tomorrow morning. I hope you understand my only request, but I do need to jump on this before the weekend **and we still need to prepare and sign a more formal purchase agreement**. As requested, I've attached my proof of funds to this e mail. The statement confirms ownership, and the current balances reflect the proof of funds. One account belongs to myself, the other to my girlfriend Claudia Herbert. I'll look to consolidate the two this weekend **to send you a lump sum, should we move forward."[2]**
> (Énfasis en original)

Alegaron que existía controversia en cuanto a la suficiencia de los mensajes para perfeccionar el contrato. Además, que el demandante en su narración de hechos de la demanda omitió un elemento esencial de la contratación ya que se le explicó al mostrarle la propiedad que, de interesar perfeccionar la oferta, debería consignar un depósito mínimo de dos mil dólares y entregar un acuerdo de compraventa firmado (Sellers buyer agreement) como condición para sacar la propiedad del mercado, ya que existían varios compradores interesados por lo que la propiedad no saldría del mercado hasta que se completaran dichos

---

[1] Apéndice págs. 59-82.
[2] Apéndice pág. 85.

pasos.[3] Expresó la parte opositora que la demandante en sus mensajes de correo electrónico y los mensajes de texto confirman que el demandado le notificó a todos los posibles compradores que requería la entrega de un depósito no menor de dos mil dólares y la firma de un pre acuerdo de venta como condición para sacar la propiedad del mercado, ya que existían varios compradores interesados.[4] Agregó que, según el "propio texto escrito por la parte demandante era necesario que el demandante firmara un acuerdo de compraventa y entregara un depósito mínimo de dos mil dólares [$2,000] para perfeccionar el acuerdo. Mientras eso no ocurra el demandado estaba en libertad de continuar mostrando el apartamento a posibles compradores tal y como le manifestó claramente a la parte demandante."[5]

En cuanto transcripción de ciertos documentos mencionados en los hechos, el demandado expresó que estos son una porción, por lo que solicitó que se evalúe el documento en su totalidad.[6] Concluyó. en síntesis, que existe controversia en cuanto a si se perfeccionó o no el acuerdo contractual, pues existía la condición suspensiva de la entrega del depósito y la firma del preacuerdo para que se sacara la propiedad del mercado. Expresó que, al existir controversia en cuanto a un elemento esencial de la contratación, no procedía que se dictara sentencia de forma sumaria.[7]

Evaluados los escritos, el foro primario dictó una Sentencia Parcial Final en la que determinó que se perfeccionó un contrato bilateral, con el cual incumplió la parte Demandada. En esta formuló las siguientes determinaciones de hechos:

---

[3] Apéndice pág. 85.
[4] Íd.
[5] Apéndice pág. 85, párrafo 6.
[6] Apéndice pág. 86.
[7] Apéndice pág. 91.

1. Los Demandados son dueños de un apartamento localizado en el F-1104 del Condominio Ocean Plaza, sito en el pueblo de Luquillo, Puerto Rico.

2. Los demandados señores Rodríguez colocaron a la venta dicho Apartamento al público en general a través de listados en las redes sociales y otros sitios.

3. El 9 de marzo de 2022, el señor Fiege le escribió un mensaje de texto al señor Rodríguez indicando que estaba interesado en ver el Apartamento y potencialmente hacerle una oferta en cash. El señor Rodríguez le respondió y, tras un intercambio de mensajes lograron ponerse de acuerdo para que el señor Fiege pasara a ver el Apartamento el 15 de marzo de 2022.

4. El pasado 15 de marzo de 2022, el demandante Maximilian Fiege, luego de haber visto el Aparamento, y habiéndose interesado y decidido a adquirir el mismo, envió por correo electrónico una oferta escrita para la compraventa (en efectivo) del Apartamento al co-demandado señor Rodríguez. La oferta realizada fue por la cantidad de doscientos noventa mil dólares ($290,000.00).

5. El 15 de marzo de 2022, el señor Rodríguez le mostró el Apartamento al señor Fiege, y ese mismo día, a eso de las 8:30pm, el señor Fiege envío por correo electrónico al señor Rodríguez, una oferta escrita para la compraventa del Apartamento, en efectivo, por la cantidad de doscientos noventa mil dólares ($290,000.00). Además, junto al correo electrónico, el señor Fiege anejó un documento para comprobar la capacidad de fondos para la compraventa.

6. El 15 de marzo de 2022, a eso de las 8:52pm, el señor Rodríguez aceptó la oferta escrita del señor Fiege, mediante el envío de un correo electrónico en respuesta al suyo. En específico, el correo electrónico indicaba como sigue: "Yes, I will accept your offer below for $290,000.00. Thank you for providing proof of cash purchase. I will contact my attorney tonight. Please do not hesitate to contact me for any additional questions that your or your girlfriend may have. I look forward to closing this deal also".

7. El 15 de marzo de 2022, el señor Fiege le escribió al Sr. Rodríguez en contestación a su respuesta que "[g]reat to hear I'll have Jorge get started on the documents for your attorney to review. We will need the full public deed (escritura de compraventa) and the CRIM."

8. El 16 de marzo de 2023, el señor Fiege le envió otro correo electrónico al señor Rodríguez mediante el cual le recalca que por favor le dejara saber si tenía alguna pregunta y que le interesaba proceder con un retraso

mínimo dado el corto período de cierre que habían acordado anteriormente.

9. El 16 de marzo de 2023, el señor Fiege le escribió por mensaje de texto al señor Rodríguez, para darle seguimiento sobre la oferta cursada. Además, le pidió que le enviara el documento del CRIM y la escritura del Apartamento. Por último, le dijo que podían redactar el contrato rápidamente y que le dejara saber si tenía alguna pregunta.

10. Ese mismo día, 16 de marzo de 2022, el señor Rodríguez le escribió al Sr. Fiege para informarle que estaría comunicándose con este último más tarde esa noche, puesto que tenía otros compradores interesados a los cuales le iba a mostrar el Apartamento.

11. Lo anterior provocó que la Parte Demandante tuviese que recordarle al señor Rodríguez de que las partes ya habían llegado a un acuerdo el día anterior para la compraventa del Apartamento. Por tanto, le adujo que estaba obligado con los términos y condiciones de tal acuerdo contractual. En adición, y basándose en el acuerdo contractual al que habían llegado las partes, el señor Fiege le solicitó al señor Rodríguez que desistiera de enseñar el Apartamento a terceros interesados.

12. El 17 de marzo de 2023, el señor Fiege le envió un mensaje de texto al Sr. Rodríguez inquiriendo sobre si había removido el Apartamento del listado colocado en Zillow, y si sus abogados estaban preparando los documentos de la venta; el Sr. Rodríguez contestó ya que otro comprador había ofrecido una oferta más alta y entregado un depósito.

13. El 17 de marzo de 2022, el señor Fiege, a través de sus abogados, le envió al señor Rodríguez un apercibimiento, mediante notificación escrita de que existía un incumplimiento de su parte con la Parte Demandante.

14. El mismo 17 de marzo de 2022, la Parte Demandada y los esposos Rafferty firmaron un contrato de compraventa para el Apartamento, en el cual se incluía el precio acordado y el día de cierre.

15. El 2 de abril de 2022, es decir, siete (7) días luego de que el señor Fiege radicara la presente reclamación judicial y emplazase a la Parte Demandada, los esposos Rafferty junto a la Parte Demandada otorgaron una escritura de compraventa sobre el Apartamento, según surge de la escritura número nueve (9) de esa fecha, otorgada por la Notario Público, Brenda Rosa Díaz; dicha escritura se presentó para inscripción ante el Registro de la Propiedad de Fajardo el 4 de abril de 2022.

El foro primario expuso el derecho sobre la sentencia sumaria y las disposiciones del Código Civil de 2020 sobre los contratos y la compraventa. Concluyó el tribunal de instancia que no existía controversia respecto al hecho de que hubo una oferta por escrito por parte del Demandante para la compraventa del Apartamento y que referida oferta fue contestada y aceptada por el señor Rodríguez, por escrito, en la misma fecha. Consecuentemente, decretó que desde dicho mismo momento cumplieron los requisitos y se perfeccionó un contrato de compraventa entre las partes el cual debió haber sido honrado. Entendió también que los demandados incumplieron de forma temeraria con el contrato de compraventa perfeccionado.

En desacuerdo, los demandados Rodríguez acuden ante nuestro foro mediante recurso de apelación en el que alegan que incidió el Tribunal de Primera Instancia al:

> **Primero**: Al dictar sentencia sumaria cuando existe controversia sobre elementos subjetivos de intención, propósitos mentales y cuando el factor credibilidad es esencial y está en disputa incidiendo sobre el elemento de causa en la contratación y adjudicando el tribunal credibilidad sin la celebración de una vista evidenciaria, en contravención con lo resuelto en Ramos Pérez v. Univisión, 178 DPR 200, 219 (2010), Abrahams Rivera v. ELA, 178 DPR 914, 933 (2010).
>
> **Segundo**: Al resolver que se configuraron los elementos del contrato entre las partes, a base del texto en un correo electrónico a pesar de que una de las partes alega haber solicitado expresamente el cumplimiento de dos condiciones para sacar la propiedad del mercado y sin tomar en consideración los actos anteriores, coetáneos y posteriores para determinar la intención de las partes contratantes en contravención a los establecido en Asoc. Res. Los Versalles, 194 DPR 258 (2015) a la pág. 267.
>
> **Tercero**: Al determinar que la parte demandada apelante, falló en su obligación de sobrepasar el peso de la prueba con evidencia que apoye los hechos materiales en disputa, cuando de las alegaciones de las partes y la propia prueba ofrecida por la parte demandante en su moción de sentencia sumaria surge prueba de las alegaciones de controversia de hechos

que fueron debidamente señaladas por la parte demandada apelante en su escrito de oposición.

Recibida la Apelación, le concedimos término al Apelado para presentar su posición y este no compareció, por lo que evaluamos el recurso sin esa comparecencia.

**II.**

**A.**

Es norma reiterada que nuestro ordenamiento procesal civil reconoce el uso y valor del mecanismo de la sentencia sumaria como vehículo para asegurar la solución justa, rápida y económica de un caso. Universal Company y otros v. ELA, 2023 TSPR 24, 211 DPR ___ (2023), res. 7 de marzo de 2023; Meléndez González et al. v. M. Cuebas, 193 DPR 100 (2015); SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013); Ramos Pérez v. Univisión, 178 DPR 200 (2010). Tal herramienta posibilita la pronta resolución de una controversia cuando no se requiera la celebración de un juicio en su fondo.

Para que proceda este mecanismo es necesario que de los documentos no controvertidos surja de que no hay una controversia real y sustancial sobre los hechos del caso. Universal Company y otros v. ELA, *supra*; Ramos Pérez v. Univisión, *supra*, pág. 214. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Universal Company y otros v. ELA, *supra*; Meléndez González et al. v M. Cuebas, *supra*; Ramos Pérez v. Univisión, *supra*, pág. 213.

Así pues, para adjudicar en los méritos una controversia de forma sumaria, es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja

de que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. Pérez Vargas v. Office Depot, 203 DPR 687 (2019); Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V.

La parte promovida no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar en forma detallada y específica, como lo hiciera la parte solicitante. Bobé et al. v. UBS Financial Services, 198 DPR 6, 21 (2017); 32 LPRA Ap. V, R. 36.3(e).

Una vez presentadas la solicitud de sentencia sumaria y su oposición, el tribunal analizará tanto los documentos incluidos en ambas mociones como los que obren en el expediente del tribunal, y determinará si la parte opositora controvirtió algún hecho material y esencial o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. Bobé et al. v. UBS Financial Services, *supra*.  La omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática. Mun. de Añasco v. ASES et al., 188 DPR 307, 327 (2013); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 556 (2011); González Aristud v. Hosp. Pavía, 168 DPR 127, 138 (2006). Solo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Meléndez González et al. v. M. Cuebas, supra, pág. 109.

Si el cúmulo de la evidencia demuestra que en efecto no hay controversia sustancial respecto a algún hecho esencial y

pertinente, el tribunal deberá dictar sentencia sumaria si procede como cuestión de derecho. Esto es, si el derecho así lo justifica. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; Universal Company y otros v. ELA, *supra*; Oriental Bank v. Perapi et al*.*, 192 DPR 7, 25 (2014). A su vez, el Tribunal Supremo ha destacado que no es recomendable utilizar la moción de sentencia sumaria en aquellos casos donde exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia; incluso, cuando el factor de credibilidad es esencial y está en disputa. Ramos Pérez v. Univisión*,* 178 DPR 200, 219 (2010).

A tenor con lo anterior, al revisar una determinación de primera instancia, sobre una solicitud de sentencia sumaria, como foro intermedio podemos: (1) considerar los documentos que se presentaron ante el foro primario, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. Segarra Rivera v. Int'l Shipping, et al., 208 DPR 964 (2022); Meléndez González et al. v. M. Cuebas, *supra*, pág. 114. Así pues, el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. Esta revisión es una *de novo*. Segarra Rivera v. Int'l Shipping, et al*.*, *supra*; Meléndez González et al. v. M. Cuebas, *supra*, pág. 116.

**B.**

Como se sabe, las obligaciones nacen de la ley, de los contratos, cuasicontratos, de los actos ilícitos, los actos u omisiones en que interviene culpa o negligencia; y cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento

jurídico. Artículo 1063 de la Ley Núm. 55 de 1ro de junio de 2020, Código Civil de 2020 (Código Civil), 31 LPRA sec. 8984.

Así, una de las fuentes de las obligaciones es el contrato. Este se define como, "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." Artículo 1230 del Código Civil, 31 LPRA sec. 9751.

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil, 31 LPRA sec. 9771.

Existe consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación. Artículo 1238 del Código Civil, 31 LPRA sec. 9772. La oferta se define como "el acto jurídico unilateral, dirigido a una persona determinable, que contiene los elementos necesarios para la existencia del contrato propuesto, o el medio para establecerlos. Si carece de alguno de tales elementos y no prevé el medio para establecerlo, el acto se considera invitación a ofertar." Artículo 1239 del Código Civil, 31 LPRA sec. 9773. Por otra parte, la aceptación es el acto jurídico unilateral, puro y simple por el cual se presta conformidad a una oferta. La aceptación de una oferta hecha por un medio que admite una respuesta inmediata debe efectuarse inmediatamente. El acto por el cual se proponen modificaciones a los términos de la oferta no constituye aceptación, sino una nueva oferta hecha al primer oferente. Artículo 1241 del Código Civil, 31 LPRA sec. 9775. La aceptación puede revocarse a través de un medio más

rápido que el utilizado inicialmente para comunicarla al oferente. Artículo 1242 del Código Civil, 31 LPRA sec. 9776.

Con frecuencia sucede que las partes, puestas en función de contratantes, someten el cumplimiento de la obligación a la realización futura de un hecho o la llegada de determinado día. López v. González, 163 DPR 275, 282 (2004). Reconociendo esta modalidad en las relaciones jurídicas de las personas se suele hablar de obligaciones puras, condicionales y a plazos. López v. González, *supra*. Se ha indicado que "las obligaciones puras se definen como aquellas que son exigibles desde el instante mismo de quedar constituida la relación obligatoria; las condicionales son aquellas cuya eficacia depende de que se cumpla un hecho futuro o incierto; y las [de] a plazo las que dejan establecida en firme la prestación sin que pueda exigirse todavía en el momento de quedar constituida la relación obligatoria." López v. González, *supra*, pág. 282, citando a Puig Brutau, Fundamentos de Derecho Civil, Tomo I, Vol. II, Ed. Bosch, 1985, pág. 81. En lo que aquí concierne, dentro de las obligaciones condicionales se encuentran las obligaciones sujetas a condición suspensiva, a cuyo cumplimiento se subordinan los efectos de un acto jurídico por voluntad de los contratantes. López v. González, *supra.*

A tales efectos, el Artículo 303 del Código Civil, 31 LPRA sec. 6241, provee como sigue:

> Por la condición se supedita la eficacia de un negocio jurídico a que ocurra un hecho positivo o negativo, futuro e incierto.
>
> La condición es suspensiva si ocurrido el hecho se produce el efecto del negocio jurídico; y es resolutoria si ocurrido el hecho se extingue el efecto del negocio jurídico.

En este tema, al interpretar el otrora Código Civil de 1930, el Tribunal Supremo expresó que, "[s]i la condición se cumple, la

obligación surge... Si... no se realiza, el vínculo de derecho no llega a aparecer". López v. González, *supra,* pág. 283, citando a Jarra v. Axxis Corporation, 155 DPR 764 (2001); Meléndez v. Jiménez Realty, Inc., 98 DPR 892, 897.

De otro lado, es principio básico del derecho de obligaciones que nadie está obligado a contratar. PRFS v. Promoexport, 187 DPR 42, 55 (2012); Colón v. Glamorous Nails, 167 DPR 33, 44 (2006); Prods. Tommy Muñiz v. COPAN, 113 DPR 517, 526 (1982).   En esa línea, el Artículo 1232 del Código Civil dispone que "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público" […].  31 LPRA sec. 9753.

Por último, cuando hay divergencia en cuanto a la interpretación de los contratos, el Artículo 354 del Código Civil, 31 LPRA sec. 6342 provee las siguientes reglas sobre la interpretación del negocio jurídico:

> (a)    se presume que el negocio jurídico se otorga de buena fe; y
>
> (b) si el negocio jurídico es unilateral, se atenderá al sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad de su autor. En tal caso, se observará lo que parezca más conforme a la intención que tuvo al otorgarlo.  Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.  Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado. Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aún anterior al otorgamiento del negocio jurídico.

**III.**

Estamos ante un caso que tiene múltiples eventos en controversia, que no fueron atendidos por la parte apelada en su declaración jurada y la parte apelante así lo indicó en su oposición a la misma. Ante ello, no procede resolver esta controversia por el mecanismo de sentencia sumaria y los primeros dos errores levantados en la Apelación se cometieron y no será necesario atender el tercer error pues estamos dejando sin efecto la sentencia que aquí nos ocupa.

Como antes expresamos, no es recomendable utilizar la moción de sentencia sumaria en aquellos casos donde exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia; incluso, cuando el factor de credibilidad es esencial y está en disputa. Ramos Pérez v. Univisión, supra, a la pág. 219 (2010).

Veamos los hechos en controversia que el TPI no encontró, pero si surgen de los documentos en los autos y no permiten resolver la controversia por sentencia sumaria.

El 15 de marzo de 2023 el apelante le mostró al apelado el apartamento, y ello duró un rato y conversaron. Nada de lo dialogado, como requisitos para perfeccionar un contrato de compraventa del apartamento, durante esa reunión de mostrar el apartamento, fue mencionado en la declaración jurada del señor Fiege. Si las partes hablaron de que se requería un depósito de $2,000.00 o no para perfeccionar un contrato entre ellos que sacara la propiedad del mercado y solo tuviera exclusividad sobre la misma el aquí apelado, que es demandante en el TPI, no se menciona en la declaración jurada en que se basó la sentencia sumaria, por ello que se dijo o no se dijo mientras ocurrió la visita al apartamento en cuestión está en controversia. La declaración

jurada que se somete junto con su solicitud de resolver el asunto de forma sumaria, pretende que se asuma que nada más se habló entre las partes. Lo que se habló o no, entre las partes es un hecho importante en controversia sobre lo que nada se sabe y por ello será necesario celebrar un juicio en los méritos.

También está en controversia el efecto del correo electrónico que envió el Sr. Fiege al apelante a ver si solo con lo allí ofertado por Fiege y contestado por el apelante, permite la perfección de un contrato de compraventa de un bien inmueble. Ese asunto, en ausencia de mas detalles sobre lo necesario para sacar la propiedad del mercado conforme resuelve el TPI, no permite resolver el asunto sumariamente, pues de esos correos electrónicos, enviados en el transcurso de dos días consecutivos, solo crea una controversia de si en efecto ocurrió el consentimiento, objeto y causa necesarios para perfeccionar un contrato de compraventa de inmueble.

Además, a esta controversia le aplica el vigente Código Civil. En este se define la oferta como "el acto jurídico unilateral, dirigido a una persona determinable, que contiene los elementos necesarios para la existencia del contrato propuesto, o el medio para establecerlos.   Si carece de alguno de tales elementos y no prevé el medio para establecerlo, el acto se considera invitación a ofertar."  Artículo 1239 del Código Civil, 31 LPRA sec. 9773.

Por ello reiteramos que está en controversia si en la oferta del apelado efectuada por correo electrónico el 15 de marzo pasado, estaban todos los elementos requeridos para que la misma, al aceptarse, pudiera considerarse como un contrato de opción de compra ya en vigor. También faltan los elementos que surgen de lo hablado o no, durante el acto de muestra del

apartamento, que el apelado guarda silencio en su declaración jurada.

La parte apelada admitió en un correo electrónico a las 9:04 pm del 15 de marzo de 2023. que se necesitaban evaluar documentos adicionales para perfeccionar un vínculo contractual y no explica el detalle necesario que permitiese concluir que se había perfeccionado un contrato a ese momento.

En el mismo también se indica que el acto por el cual se proponen modificaciones a los términos de la oferta no constituye aceptación, sino una nueva oferta hecha al primer oferente. Artículo 1241 del Código Civil, 31 LPRA sec. 9775.

No hay controversia de que el apelado envió otro correo electrónico el 16 de marzo pasado intentando retrasar por unos días la compra y ese mismo día el apelante le contestó en otro correo electrónico, que tenía otros compradores interesados a los cuales les iba a mostrar el apartamento. Está en controversia los efectos de ese intento de atraso y la contestación al mismo. Eso no lo menciona ni explica el apelado, que tiene el peso en demostrar ausencia de hechos materiales en él caso y no lo hizo. Como no ofrece ningún detalle el apelado en su declaración jurada que niegue otras conversaciones con el apelante, unido a la ausencia de detalles en la declaración jurada del apelado, solicitante de la sentencia sumaria, crea una controversia que solo se puede dirimir en un juicio en sus méritos.

Lo indicado en la Sentencia Parcial Final como inciso 11 de las determinaciones de hechos, no es correcto pues si está en controversia si se había perfeccionado un contrato de compraventa de inmueble o no. El apelado, en su declaración jurada indicó que solo le informó al apelante su opinión de que había un contrato perfeccionado, con el que equivocadamente el

TPI coincidió y aquí revocamos e indicamos que hay varios hechos en controversia que no permiten mantener este dictamen al que se llega mediante el mecanismo de sentencia sumaria y solo se podrá adjudicar luego de un juicio plenario.

## IV.

Por los fundamentos expuestos, los que hacemos formar parte de esta sentencia, se revoca la Sentencia apelada y se ordena que continúen los procedimientos en el TPI cónsono con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones