| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VIII | | |
| ENRIQUE OCHOA VIÑAS<br><br>Demandante-Apelante<br><br>Vs.<br><br>HUGO DE LA UZ COLÓN<br><br>Demandado-Apelado | KLAN202400305 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. D AC2018-0139<br><br>Sala: 701<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO Y COBRO DE DINERO |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece la parte apelante, el Sr. Enrique Ochoa Viñas (en adelante, el "señor Ochoa Viñas" o la "parte apelante") para solicitarnos que se revise y revoque la *Sentencia* emitida el 22 de febrero de 2024 y notificada el 27 de febrero del mismo año por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante "TPI"), en la cual declaró "No Ha Lugar" tanto la *Demanda* presentada por el señor Ochoa Viñas como la *Reconvención* presentada por el Sr. Hugo de la Uz Colón (en adelante, el "señor de la Uz Colón" o la "parte apelada").[1]

Examinada la solicitud de autos, la transcripción estipulada por las partes, así como los alegatos y el estado de derecho aplicable ante nuestra consideración, se confirma la *Sentencia* apelada, por los fundamentos que expondremos a continuación.

---

[1] *Véase*, Apéndice del Recurso de Apelación, págs. 1-8.

Número Identificador

SEN2024 _____

**I.**

El caso de autos se originó con la presentación de una *Demanda* por parte del señor Ochoa Viñas en contra del señor De la Uz Colón sobre incumplimiento de contrato y cobro de dinero. A través de este escrito, alegó que el 6 de julio de 2016 suscribió cierto contrato con la parte apelada mediante el cual acordó venderle a este último una embarcación marca Sea Ray, modelo Sundancer 450, del año 1996, con su equipamiento, por la suma de $200,000.000. Expresó que acordaron que el señor De La Uz Colón le realizaría pagos mensuales consecutivos de $1,696.00 al 8%, a partir del 1 de agosto de 2016. Manifestó que, a pesar de ello, la parte apelada solo satisfizo el primer pago de la deuda, por lo que le debe la cantidad de $120,000.00, más los intereses acumulados. Asimismo, indicó que dicha deuda es líquida, vencida y exigible. Por último, arguyó que ha hecho varias gestiones para cobrar el referido dinero, pero que estas han sido infructuosas. Así pues, le solicitó al TPI que declare "Con Lugar" la *Demanda* y ordene al señor De La Uz Colón a satisfacer la cantidad pendiente, más la suma de $10,000.00 para costas, gastos y honorarios de abogado.

Posteriormente, el 4 de junio de 2019 la parte apelada presentó su *Contestación a Demanda* mediante la cual negó la mayoría de las alegaciones expuestas en su contra y argumentó que el verdadero dueño de la embarcación es Mio Holdings Inc, y no el señor Ochoa Viñas. Asimismo, expresó que no existe una resolución corporativa de dicha entidad autorizando a la parte apelante a comparecer en representación de la corporación. Además, señaló que, si se tomaran por ciertas las alegaciones expuestas en la *Demanda,* el monto que la parte apelante sostiene que él le adeuda no representa la cantidad real.

En esa misma fecha, presentó una *Reconvención* a través de la cual aceptó que suscribió con el señor Ochoa Viñas cierto contrato para la compra de una embarcación. Alegó que, en dicho contrato, la parte apelante compareció en su carácter personal y no como representante de Mio Holdings Inc. Expresó que el señor Ochoa Viñas le presentó una tasación inflada mediante la cual lo convenció de que la embarcación tenía un valor en ese momento de $140,000.00 y que, con una inversión mínima, valdría alrededor de $200,000.00.

Igualmente, afirmó que, al momento de otorgar el contrato, la parte apelante se comprometió a gestionar la documentación para cumplir con el certificado de documentación del Coast Guard. Expresó que, ante la negativa del señor Ochoa Viñas de cumplir con su parte del acuerdo, le informó a este último que no realizaría más pagos hasta que se obtuviera la referida certificación. Señaló que, a la fecha de la presentación de la *Reconvención* la parte apelante no ha realizado dicha gestión.

Del mismo modo, manifestó que la compañía de seguros bajo la cual la embarcación estaba asegurada tasó el bote y estimó su valor en $110,000.00, esto es, $30,000.00 menos de lo que el señor Ochoa Viñas le indicó. Alegó que, durante el proceso de tasación, se percataron de que la embarcación tenía problemas estructurales, los cuales fueron ocultados por la parte apelante. Sostuvo que, durante el proceso de la venta de la embarcación en cuestión, el señor Ochoa Viñas incurrió en dolo y engaño, lo que resultó en daños económicos ascendentes a $110,000.00 y daños emocionales estimados en $50,000.00.

En armonía con lo anterior, le solicitó al foro primario que declare "Ha Lugar" la *Reconvención,* resuelva el contrato en controversia, ordene la devolución de las prestaciones realizadas y ordene a la parte apelante resarcirle por los daños económicos que

su engaño causó, más el pago de los daños emocionales que suman a $50,000.00, así como $10,000.00 por concepto de costas, gastos y honorarios de abogado.

Así las cosas, el 25 de junio de 2019, el señor Ochoa Viñas presentó su *Réplica a Reconvención* en la que reiteró los argumentos esbozados en la *Demanda*, negó la mayoría de las alegaciones expuestas en su contra y aclaró que el señor De La Uz Colón tuvo la oportunidad de inspeccionar, utilizar y consultar con un especialista el valor de la embarcación. Asimismo, expresó que el precio acordado representa un valor justo y razonable de la embarcación al momento en que se acordó y a base del mercado y las condiciones en las que fue entregada. Señaló que, al momento de la entrega, la embarcación no tenía defectos ni problemas estructurales. Además, indicó que en las negociaciones llevadas a cabo por las partes no medio dolo ni engaño alguno.

Más adelante, el 24 de octubre de 2022, la parte apelante presentó una *Moción de Sentencia Sumaria* a través de la cual solicitó la disposición sumaria de la presente controversia. En detalle, relató que el señor De La Uz Colón es un capitán de embarcaciones certificado y de gran experiencia que tuvo la posesión y uso de la referida embarcación alrededor de seis (6) meses previos al otorgamiento del contrato en controversia. Expresó que, en dicho periodo, la parte apelada probó e inspeccionó la propiedad. Igualmente, alegó que el señor De La Uz Colón venía obligado a velar y cuidar la embarcación como un buen padre de familia, por lo que cualquier daño y/o desperfecto que sufriera la embarcación sería a cargo de él. Por último, afirmó que ha realizado múltiples gestiones de cobro, pero no ha tenido éxito.

El 2 de noviembre de 2022, el TPI emitió una *Orden* mediante la cual le concedió a la parte apelada un término de veinte (20) días para exponer su posición respecto a la *Moción de Sentencia Sumaria*

interpuesta por el señor Ochoa Viñas. El 22 de noviembre de 2022, el señor De La Uz Colón presentó una *Moción Solicitando Término Adicional para Presentar Oposición a Moción Solicitando Sentencia Sumaria.* Al día siguiente, el 23 de noviembre de 2022, la parte apelante presentó una *Moción Solicitando se dé por Sometida Solicitud Sin Oposición.* El 1 de mayo de 2023, el TPI emitió una *Resolución* a través de la cual declaró "Ha Lugar" la *Moción solicitando se dé por Sometida Solicitud sin Oposición.*

Un día después, el 2 de mayo de 2023, el foro primario emitió una *Resolución* en la que declaró "No Ha Lugar" la *Moción de Sentencia Sumaria* bajo el fundamento de que existen controversias medulares de hechos que impiden la disposición sumaria del caso. En específico, determinó que los siguientes asuntos están en disputa: (1) ¿Quién es el titular de la embarcación marca sea Ray Sundancer 450, del año 1996, modelo 3126?; (2) si el señor Ochoa Viñas es un representante autorizado de la corporación Mio Holdings Inc. y (3) en caso de que se determine que la parte apelante es un representante autorizado de Mio Holdings, Inc., ¿Qué cantidad, si alguna, adeuda el señor De La Uz Colón?[2]

Por su parte, en dicha *Resolución* el TPI estableció que los siguientes hechos son incontrovertidos:

1. El 6 de julio de 2016, las partes de marras suscribieron un Contrato de Compraventa de Bien Mueble. Veamos:
a. DE UNA PARTE: DON ENRIQUE OCHOA VIÑAS, mayor de edad, casado, doctor en odontología y vecino de Fort Myers, Florida y de paso por esta isla de Puerto Rico, en adelante denominado "EL VENDEDOR".

b. Y DE LA SEGUNDA PARTE: DON HUGO DE LA UZ COLÓN, mayor de edad, soltero, propietario y vecino de Bayamón, Puerto Rico, en adelante denominado "EL CONPRADOR."

2. El señor Ochoa expresó lo siguiente en el inciso primero del Contrato de Compraventa de Bien Mueble:
Manifiesta El Vendedor ser el representante de Mio Holdings Inc., que es la corporación dueña de una embarcación marca Sea Ray Sundancer 450, con fecha

---

[2] *Véase,* Apéndice del Recurso de Apelación, pág. 63.

de fabricación del año 1996, que tiene dos (2) motores Caterpillar, modelo 3126 de cuatrocientos veinte (420) caballos de fuerza cada uno, con un total de horas de aproximadas 1050.

Dicha embarcación tiene una planta eléctrica marca Westerbeme de seis (6) kilovatios, además de radar, cruise control, un Raymarine GPS de doce (12) pulgadas el monitor, radio y otros accesorios eléctricos típicos para este modelo de embarcación.

3. Surge del inciso 6 del Contrato de Compraventa de Bien Mueble que el precio de venta de la embarcación es de $120,000.00, más interés al 8%, atrasos del préstamo vigente, cualquier costo de préstamo. Dicho precio de venta no incluye ningún pago adicional en o antes del 1 de agosto de 2016.

4. En los Inciso 2 y 3 de los Términos y Condiciones del Contrato de Compraventa de Bien Mueble dispone en qué manera se efectuará el pago aplazado de $120,000.00 y aceleramiento de la deuda:

DOS: Manifiestan las partes que el término de este contrato será de noventa y seis (96) meses a razón de MIL SEISCIENTOS NOVENTA Y SEIS DÓLARES ($1,696.00) mensuales. "EL COMPRADOR" pagará marina, seguro, interés de ocho por ciento (8%) y todo gasto relacionado con la compra y mantenimiento del bote. Estos comenzarán a partir del primero (1ro,) de agosto de dos mil dieciséis (2016), además pagará TRES MIL SETECIENTOS CINCUENTA DÓLARES ($3,750.00) en julio 2016, para pagar atrasos de la hipoteca que grava la embarcación. Reconocen las partes que es condición esencial de este contrato la duración del contrato por el término acordado, por lo que "EL COMPRADOR" se compromete al cumplimiento del mismo.

TRES: El pago mensual total que realizará "EL COMPRADOR" será de DOS MIL QUINIENTOS DÓLARES ($2,500.00) mensuales, los cuales pagará "EL COMPRADOR" todos los meses a partir de agosto del 2016. El pago se hará en dos (2) partidas de MIL DOSCIENTOS CINCUENTA DÓLARES ($1,250.00), el día uno (1) de cada mes y el seguro, el segundo viernes de cada mes. Este pago de DOS MIL QUINIENTOS DÓLARES ($2,500.00) será para satisfacer la partida del préstamo de MIL SEISCIENTOS NOVENTA Y SEIS DÓLARES ($1,696.00) más un restante de OCHOCIENTOS CUATRO DÓLARES ($804.00), para pagar parte de los gastos de seguro o marina. EL COMPRADOR está consciente de que el gasto de marina y de seguro puede cambiar sin aviso y éste debe de remitir el pago de cualquier deficiencia de éstos, una vez se le dé el aviso por email o cualquier otro recurso en un período razonable de 30 días. En caso de que EL COMPRADOR pague el canon de arrendamiento con más de nueve (9) días de atrasos, tendrá un recargo por pago tardío equivalente al quince (15%) del pago

mensual de DOS MIL QUINIENTOS DÓLARES ($2,500.00).

EL comprador es responsable del 100% del pago del seguro, marina, mantenimiento y otros gastos relacionados con el bote.

El mantenimiento del bote, el mantenimiento de su fondo (limpieza), el cambio de zinc, pintura de fondo y otros mantenimientos serán la responsabilidad de EL COMPRADOR.

El pago se realizará mediante cheque certificado o por pago electrónico a favor de EL VENDEDOR o de cualquier otra persona natural y/o jurídica, que éste disponga por escrito.

En caso de incumplimiento por parte de EL COMPRADOR en el pago de dos (2) o más mensualidades, EL VENDEDOR podrá, a su única discreción, declarar el contrato en incumplimiento y solicitar a EL COMPRADOR el pago de las mensualidades vencidas y la entrega de la embarcación o podrá solicitar el pago de todas las mensualidades que queden por vencer durante la totalidad del término del contrato.

5. Surge del inciso uno de los Términos y Condiciones del Contrato de Compraventa de Bien Mueble que el señor UZ, previo a la firma de dicho contrato, inspeccionó y probó la embarcación. Los términos de venta de la embarcación son AS IS.

6. La cláusula cinco de los Términos y Condiciones del Contrato de Compraventa de Bien Mueble establece lo siguiente:

EL VENDEDOR vendrá obligado a velar y cuidar la embarcación como un buen padre de familia, Cualquier daño, mal funcionamiento, ruptura y/o desperfecto que sufra la embarcación, será de cuenta y cargo de EL COMPRADOR.

7. El señor Ochoa hizo gestiones de cobro con el señor Uz.[3]

Así las cosas, el juicio en su fondo se celebró el 6 de noviembre de 2023. Finalmente, el 22 de febrero de 2024, el foro primario emitió una *Sentencia* mediante la cual declaró "No Ha Lugar" la *Demanda* presentada por el señor Ochoa Viñas y la *Reconvención* interpuesta por el señor De La Uz Colón. Además, realizó las siguientes determinaciones de hechos:

---

[3] *Véase*, Apéndice del Recurso de Apelación, pág. 60-62.

1. La parte demandante no presentó evidencia ni documentación que acreditara quien era el dueño de la embarcación al momento de otorgar el contrato de compraventa de bien mueble.

2. La parte demandante no presentó evidencia ni documentación alguna que estableciera que, al momento de otorgar el contrato de compraventa de la embarcación, éste estaba legalmente autorizado para representar a la corporación Mio Holding, Inc.

3. La parte demandante no presentó evidencia ni documentación alguna que estableciera cual era la suma adeudada si alguna por el demandado, ante el alegado incumplimiento de contrato.

4. El testimonio de la parte demandante no nos mereció credibilidad, puesto que el mismo fue uno vago e inconsistente, carente de evidencia.

5. La parte demandada no presentó evidencia ni documentación alguna sobre los alegados pagos realizados por éste como parte del contrato de compraventa del bien mueble, ni de los alegados gastos incurridos para la embarcación, ni de los alegados daños económicos, ni de los daños emocionales sufridos por éste.

6. El testimonio del demandado no nos mereció credibilidad, siendo uno impreciso y débil, faltó de evidencia documental que resguardara sus alegaciones.[4]

Inconforme con el dictamen del TPI, el 1 de abril de 2024 la parte apelante presentó este recurso de apelación, donde le imputó al foro apelado el siguiente señalamiento de error:

PRIMER ERROR: COMETI[Ó] GRAVE Y PERJUDICIAL ERROR EL TPI AL DESESTIMAR LA DEMANDA CONCLUYENDO QUE EL TESTIMONIO DE OCHOA FUE UNO VAGO, INCONSISTENTE Y CARENTE DE EVIDENCIA. AL AS[Í] CONCLUIR COMETE GRAVE ERROR EL TPI AL APRECIAR LA PRUEBA PRESENTADA LO QUE DEMUESTRA ERROR MANIFIESTO Y GRAVE PARCIALIDAD.

Examinado el recurso en su totalidad, la transcripción estipulada y con la comparecencia de ambas partes, procedemos a establecer el derecho aplicable y resolver.

**II.**

El Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.*, según enmendado, (en adelante, "Código Civil de 1930"),[5] codificó

---

[4] *Véase*, Apéndice del Recurso de Apelación, pág. 6.

[5] El Código Civil de 1930 fue derogado al aprobarse la Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*, conocida como el "Código Civil de 2020", el cual estableció en su Art. 1812 que: "[l]os actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos

las disposiciones que rigen las obligaciones y los contratos. En nuestra jurisdicción, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil de 1930, 31 LPRA sec. 2992. Sobre las obligaciones que nacen de los contratos, estas tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de estos. Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994; *López v. González*, 163 DPR 275, 281 (2004); *Mercado, Quilichini v. UCPR*, 143 DPR 610, 627 (1997). Nuestro derecho reconoce el principio de libertad de contratación o autonomía contractual entre las partes. *Álvarez v. Rivera*, 165 DPR 1, 17 (2005). El Art. 1207 del Código Civil de 1930, establece que, "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA sec. 3372.   Así pues, los contratos serán obligatorios, cualquiera que sea la forma que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. Art. 1230 del Código Civil de 1930, *supra,* 31 LPRA sec. 3451.

Para que un contrato sea válido, este debe contener el consentimiento de los contratantes, un objeto cierto y causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930,  31 LPRA sec. 3391.  Por su parte, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato. Art. 1214 del Código Civil de 1930,  31 LPRA sec. 3401.  Por consiguiente, los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las

---

según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. En el recurso ante nos son de aplicación las disposiciones del derogado Código Civil de 1930 ya que el *Contrato* fue suscrito en el año 2019.

consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Una vez perfeccionado dicho contrato, éste tiene fuerza de ley entre las partes. Asimismo, el contrato adolece de validez y eficacia cuando el consentimiento otorgado consiste en una declaración de voluntad libre de vicios. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 886 (2008). Lo anterior en virtud del Art. 1217 del Código Civil de 1930, que establece que el consentimiento será nulo cuando es prestado por error, violencia, intimidación o dolo. 31 LPRA sec. 3404. Por tanto, los que contravengan sus obligaciones o incurran en dolo, negligencia, o morosidad en estás, quedan sujetos a la indemnización de daños y perjuicios causados. Art. 1054 del Código Civil de 1930, 31 LPRA sec. 3018. Es por lo anterior que, el acreedor de una obligación recíproca tiene la facultad de exigir el cumplimiento o la resolución de su obligación con los daños y perjuicios, así como el abono de intereses. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052.

**B.**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir las determinaciones del foro primario por sus propias apreciaciones. *Pueblo v. De Jesús Mercado,* 188 DPR 467, 478 (2013). Las decisiones de los tribunales de instancia merecen gran flexibilidad y deferencia, debido a que es el foro que conoce las particularidades del caso y son quienes están en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 735 (2018); *Mejías v. Carrasquillo,* 185 DPR 288, 307 (2012).

Ahora bien, se ha reconocido que a pesar de la deferencia que merece la determinación apelada, la misma podría ser revocada si: (1) se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto o (2) si la prueba no concuerda con la realidad fáctica, es increíble o imposible. *Pueblo v. Santiago,* 176 DPR 133, 148 (2009). **Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida,** no exista base suficiente que apoye su determinación. *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021).

De ordinario, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *WMM PFM, et al. v. Colegio et al.,* 211 DPR 871, 902-903(2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717,741 (2007). Por lo que, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

### III.

En el presente caso, el señor Ochoa Viñas nos solicitó la revocación de la *Sentencia* del TPI mediante la cual se declaró "No Ha Lugar" la *Demanda* que el interpuso. En síntesis, la parte apelante plantea que el foro primario erró al desestimar su reclamación bajo el fundamento de que su testimonio fue uno vago, inconsistente y carente de evidencia. No nos convence su posición. Veamos.

Surge del expediente ante nuestra consideración que el 6 de julio de 2016 el señor Ochoa Viñas suscribió con el señor De La Uz

Colón cierto contrato intitulado *Contrato de Compraventa de Bien Mueble*, a través del cual acordó venderle a este último una embarcación marca Sea Ray Sundancer 450 del año 1996. En lo aquí concerniente, el referido acuerdo dispone lo siguiente:

COMPARECEN

**DE UNA PARTE: DON ENRIQUE OCHOA VIÑAS, mayor de edad, casado, doctor en odontología y vecino de Fort Myers, Florida y de paso por esta isla de Puerto Rico, en adelante denominado "EL VENDEDOR**".

Y DE LA SEGUNDA PARTE: DON HUGO DE LA UZ COLÓN, mayor de edad, soltero, propietario y vecino de Bayamón, Puerto Rico, en adelante denominado "EL COMPRADOR".

LIBRE Y VOLUNTARIAMENTE:

EXPONEN

PRIMERO: **MANIFIESTA "EL VENDEDOR" ser el representante de MIO HOLDINGS INC., que es la corporación dueña de una embarcación marca Sea Ray Sundancer 450, con fecha de fabricación del año 1996,** que tiene dos (2) motores Caterpillar, modelo 3126 de cuatrocientos veinte (420) caballos de fuerza cada uno, con un total de horas de aproximadamente 1050.(énfasis suplido).

[…]

DOS: Manifiestan las partes que el término de este contrato será de noventa y seis (96) meses a razón de MIL SEISCIENTOS NOVENTA Y SEIS DOLARES ($1,696.00) mensuales. "EL COMPRADOR" pagará marina, seguro, interés de ocho porciento (8%) y todo gasto relacionado con la compra y mantenimiento del bote. Estos pagos comenzarán a partir del primero (1ro.) de agosto de dos mil dieciséis (2016), además pagará TRES MIL SETECIENTOS CINCUENTA DOLARES ($3,750.00) en julio 2016, para pagar atrasos de la hipoteca que grava la embarcación. Reconocen las partes que es condición esencial de este contrato la duración del contrato por el término acordado, por lo que "EL COMPRADOR" se compromete al cumplimiento específico del mismo.[6]

Posteriormente, el señor Ochoa Viñas presentó una *Demanda* en contra de la parte apelada por incumplimiento de contrato y cobro de dinero. Luego de varios trámites procesales, incluyendo la

---

[6] *Véase*, Apéndice del Recurso de Apelación, pág. 11 y 12.

presentación de una *Moción de Sentencia Sumaria,* el foro primario determinó que existía controversia sobre los siguientes aspectos: (1) quien es el dueño de la embarcación objeto del contrato; (2) si la parte apelante es un representante autorizado de Mio Holdings Inc.; (3) si el señor De la Uz Colón le adeuda dinero a la parte apelante y de existir dicha deuda, cuál es su monto.

Más adelante, el 6 de noviembre de 2023, se celebró el juicio en su fondo donde testificaron bajo juramento el señor Ochoa Viñas y el señor De La Uz Colón. Allí, la parte apelante declaró que creó una corporación llamada Mio Holdings para gestionar todo lo relacionado con la embarcación objeto del contrato y reconoció que no emitió una resolución corporativa para otorgar el referido contrato de compraventa. En detalle, testificó lo siguiente:

> P ¿Qué es eso de MIO Holdings?
> R **MIO Holdings es una corporación que yo creé con fines de … (ININTELIGIBLE)… la embarcación, este…la cual yo soy el único dueño**… (ININTELIGIBLE) … la única persona en la corporación.
> P ¿Esa corporación existe al día de hoy?
> R No, esa compañía no existe al día de hoy.
> P ¿Esa corporación tenía algún activo?
> R **Esa corporación, el único que tenía era el bote.**
> P ¿El bote?, ¿Cuándo usted dice el bote, a qué bote usted se refiere?
> R A una Sea Ray 450 del 1996.
> P Bien. Usted nos indica que usted es o era el único accionista de esa entidad.
> R correcto, yo soy el único accionista, sí.
> P ¿Y quién aportaba el capital, si alguno, a esa entidad?
> P Yo era el que le aportaba.
> P Don Enrique, ¿qué relación comercial, si alguna, usted tuvo con don… el señor Hugo De la Uz Colón?
> R La relación que tuvimos fue simplemente la venta del bote.
> [...]
> **P Para otorgar este contrato, porque no se desprende de él, usted no otorgó ninguna resolución corporativa, ¿verdad que no?**
> **R No.**
> P No. Y tanto en donde le leí como atrás donde firma, donde firma dice … (ININTELIGIBLE) … al final Enrique Ochoa Viñas, ¿correcto?
> R Correcto.

P Okay. **Y los pagos que usted recibía, lo cierto es que los pagos que usted recibía los recibía a nombre de don Enrique Ochoa, ¿verdad que sí?**
**R Correcto.**
P Sí, no a nombre de ninguna corporación.[7]

Finalmente, y tras oír la prueba testifical aportada por ambas partes, el TPI emitió una *Sentencia* en la que declaró "No Ha Lugar" la *Demanda* incoada por el *señor* Ochoa Viñas y la *Reconvención* presentada por el señor De la Uz Colón, al considerar que existía una total falta de evidencia que sustentara las alegaciones presentadas por las partes.

Tal como se ha señalado en los acápites precedentes, un contrato se establece cuando una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. 31 LPRA sec. 3371. En ese contexto, un contrato se torna vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes (2) objeto cierto que sea materia del contrato y (3) causa de la obligación que se establezca. 31 LPRA sec. 3391. Por lo tanto, los contratos son obligatorios, independientemente de la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. 31 LPRA sec. 3451.

Por su parte, es norma reiterada en nuestro ordenamiento jurídico que, en ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos no debemos intervenir para revisar la valoración de la aprueba, la adjudicación de credibilidad o las determinaciones de hechos realizados por el Tribunal de Primera Instancia. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 779 (2022). Esto se debe a que es el foro primario quien tiene la oportunidad de escuchar y observar directamente el comportamiento de los testigos. *Dávila Nieves v. Meléndez Marín, supra,* pág. 771. En consecuencia, la potestad de los tribunales

---

[7] *Véase,* Apéndice del Recurso de Apelación, pág. 6, 7 y 19.

apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellas circunstancias en las que, a la luz de la prueba admitida, no haya una base suficiente que respalde su determinación. *Santiago Ortiz v. Real Legacy et al., supra*, pág. 220.

Tras un análisis exhaustivo y detenido del expediente ante nuestra consideración, incluyendo la transcripción de la prueba oral vertida durante el juicio en su fondo, hemos arribado a la conclusión de que procedía la desestimación de la *Demanda* interpuesta por el señor Viñas Ochoa. Esto pues, el contrato en controversia indica de manera explícita que la titularidad de la embarcación objeto del mismo corresponde a la corporación Mio Holdings, Inc. y no a la parte apelante, en su carácter personal. A pesar de dicha realidad jurídica, en la sección de comparecencia del contrato, el señor Ochoa Viñas se presentó en su carácter personal. Aunque mas adelante en el documento afirmó ser el representante de la referida corporación, no incluyó una resolución corporativa que acreditara su capacidad para actuar en nombre de la corporación en el contrato. De hecho, surge de su propio testimonio bajo juramento que Mio Holdings, Inc. fue constituida únicamente para propósitos de la embarcación, que esta representaba su único activo, y que, al momento de otorgar el contrato en cuestión, no existía ninguna resolución que le permitiera actuar en representación de la corporación. Por consiguiente, el señor Viñas Ochoa no contaba con la autoridad en ley necesaria para disponer del bien válidamente, lo que le imposibilitaba efectuar ningún acto de disposición del mismo y, por tanto, estaba impedido de presentar la *Demanda* y reclamar el pago correspondiente a la obligación establecida en el contrato sobre el cual no tenía capacidad jurídica para comparecer en representación de la entidad titular de la embarcación.

En conclusión, no hemos encontrado ningún indicio que nos obligue a apartarnos de las adjudicaciones de credibilidad realizadas

por el juzgador de los hechos respecto a los testimonios del señor Viñas Ochoa y el señor De La Uz Colón. Además, del análisis de la prueba no se desprende que el foro primario haya mediado en pasión, prejuicio, parcialidad o error manifiesto. Así pues, entendemos que, a la luz de la prueba desfilada en la vista de juicio en su fondo, no hay fundamento suficiente para sostener la contención del señor Viñas Ochoa en su recurso, a los efectos de que el TPI cometió un grave error al desestimar la *Demanda.*

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones