ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI DJ 2025-063

| | | |
|---|---|---|
| **JORMALIZ MEDINA FLORES**<br><br>Apelante<br><br>v.<br><br>**HPM FOUNDATION, INC., h/n/c HEALTHPROMED**<br><br>Apelado | TA2025AP00255 | **APELACIÓN**<br>procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Caso Núm.:<br>**SJ2019CV08879**<br><br>Sobre:<br>Despido Injustificado; Procedimiento Laboral Sumario; Represalias; Incumplimiento de Contrato de Empleo |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de octubre de 2025.

Comparece ante nos la señora Jormalyz Medina Flores (Sra. Medina Flores o apelante) mediante una *Apelación* y nos solicita que revoquemos una *Sentencia Sumaria* emitida el 5 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Por medio de dicho dictamen, el foro primario declaró Ha

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 102. Notificada y archivada en autos el 6 de agosto de 2025.

Lugar la *Solicitud de Sentencia Sumaria* presentada por HPM Foundation, Inc. h/n/c HealthproMed (HPM o parte apelada),[2] y dictaminó No Ha Lugar la *Oposición a solicitud de sentencia sumaria* radicada por la Sra. Medina Flores.[3] En consecuencia, desestimó con perjuicio la *Querella* de epígrafe.[4]

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia Sumaria* apelada.

**I.**

El caso de marras tiene su génesis el 30 de agosto de 2019 cuando la Sra. Medina Flores radicó una *Querella* contra HPM en concepto de incumplimiento de contrato, represalias,[5] y despido injustificado,[6] bajo el procedimiento sumario.[7] Arguyó que trabajó para HPM por contrato y sin término fijo desde enero de 2012 hasta el 30 de agosto de 2018. Además, expuso que comenzó a laborar en dicha empresa como Relacionista Comunitario con un salario de $42,000.00.

---

[2] *Íd.*, Entrada Núm. 75.

[3] *Íd.*, Entrada Núm. 84.

[4] *Íd.*, Entrada Núm. 1.

[5] *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115 del 20 de diciembre de 1991 (Ley Núm. 115-1991), según enmendada, 29 LPRA secs. 194 *et seq.*

[6] *Ley sobre Despidos Injustificados*, Ley Núm. 80 del 30 de mayo de 1976 (Ley Núm. 80-1976), según enmendada, 29 LPRA secs. 185a *et seq.*

[7] Véase SUMAC, Entrada 1; Véase, además, *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 del 17 de octubre de 1961 (Ley Núm. 2-1961), según enmendada, 32 LPRA secs. 3118 *et seq.*

La Sra. Medina Flores sostuvo que, en el año 2015, el entonces Director de Finanzas de HPM, el señor Alexis Miranda (Sr. Miranda), le solicitó a ella y a otros empleados a realizar funciones propias de un Técnico de Farmacia, a sabiendas de que ninguno de ellos ostentaba la licencia para ejercerlas. Alegó la Sra. Medina Flores que se opuso a acatar las instrucciones impartidas por el Sr. Miranda e informó verbalmente y por escrito que lo suplicado era ilegal. Expuso que, posteriormente, el Sr. Miranda le privó de algunas de sus funciones principales, más le impuso funciones y responsabilidades ajenas a su puesto, creándole así condiciones onerosas de trabajo.

Luego de rechazar una oferta de HPM para el puesto de Administradora Asociada de Vieques y Culebra, la Sra. Medina Flores aceptó la posición de Administradora Asociada de Vieques,[8] en mayo de 2017, con un salario de $53,500.00. Indicó, sin embargo, que un mes después, HPM realizó una serie de despidos y la nueva Directora Ejecutiva de HPM, la licenciada Yvonne Rivera (licenciada Rivera), le expresó haber puesto en "*hold*" tanto su cambio de puesto como su aumento de salario. Ante ello, la Sra. Medina Flores expuso que continuó con la sobrecarga de funciones y condiciones onerosas de trabajo, sin aumento de salario ni

---

[8] SUMAC, Entrada Núm. 75, Anejo 12. Aunque en la *Querella* indica que el puesto ofrecido fue con relación al Municipio de Vieques, de la carta del 10 de mayo de 2017, se desprende que el empleo propuesto fue respecto al Municipio de Culebra.

ascenso. En febrero de 2018, no obstante, adujo que HPM le concedió un aumento salarial.

Según planteó la Sra. Medina Flores, para marzo de 2018, tres empleados que trabajaban bajo su supervisión, incluyendo a la Oficial de Relaciones con la Comunidad, la señora Jessica Galletti (Sra. Galletti), llegaron tarde de su hora de almuerzo y omitieron reportar sus respectivas tardanzas. Por tal razón, la Sra. Medina Flores sostuvo que se lo notificó a la licenciada Rivera y, siguiendo las instrucciones de ésta, amonestó a los trabajadores.

La Sra. Medina Flores expresó que, el 24 de mayo de 2018, la Directora de Recursos Humanos, la señora Yaitza Rodríguez (Sra. Rodríguez), se reunió con ella para informarle que se encontraba bajo investigación ante la queja en concepto de discrimen de edad presentada en su contra por parte de la Sra. Galletti. La Sra. Medina Flores expuso que, según la Sra. Rodríguez, ella cambió y eliminó algunas de las funciones de trabajo de la Sra. Galletti para dárselas a una empleada más joven; y la Sra. Rodríguez le indicó que tenía que abstenerse de referirse a la Sra. Galletti como la "vieja del grupo". Según la Sra. Medina Flores, la Sra. Rodríguez le expuso que entendía que la queja respondía al descontento de la Sra. Galletti con la amonestación realizada en marzo de 2018.

Planteó la Sra. Medina Flores que, luego de la reunión con la Sra. Rodríguez, también se reunió con la licenciada Rivera para

hablar con ella sobre la queja presentada por la Sra. Galletti. Argumentó que, al día siguiente, le entregó a la Sra. Rodríguez documentos para demostrar la falsedad de la queja de la Sra. Galletti. La Sra. Medina Flores expuso que, tan pronto negó las falsas y calumniosas imputaciones de la Sra. Galletti, y participó y cooperó con la investigación de la queja, HPM comenzó un patrón de represalias en su contra tal como el ascenso de la Sra. Galletti a una posición de supervisora.

Por tales razones, la Sra. Medina Flores suplicó del foro primario que ordenara a HPM a pagarle una suma no menor de $100,000.00 en concepto de daños emocionales; una cantidad de $14,375.00 por la cancelación del ascenso y el aumento de sueldo; una suma de $33,999.90 en concepto de compensación básica equivalente a tres (3) meses de salario más una compensación progresiva equivalente a dos (2) semanas de salario por cada año de servicio; una suma por represalias igual al doble de los daños sufridos, los salarios dejados de devengar, y la reinstalación en su puesto; y una cantidad razonable en concepto de honorarios de abogado que no fuese menor del 25% de las sumas concedidas a ella.

Por su parte, HPM presentó una *Contestación a la Querella* el 21 de noviembre de 2019.[9] Alegó que nunca se habló de colocar en

---

[9] *Íd.*, Entrada Núm. 5.

"*hold*" un cambio de posición ni de salario. Además, planteó que tampoco se tomaron represalias en contra de la Sra. Medina Flores ni existió un ambiente hostil. De igual modo, arguyó que la Sra. Medina Flores no fue despedida, sino que renunció libre y voluntariamente; y el cambio de posición de la Sra. Galletti se debió a una necesidad de organización y se realizó acorde a la preparación académica de esta.

Luego de varios trámites procesales, el 2 de noviembre de 2022, HPM presentó una *Solicitud de Sentencia Sumaria* donde suplicó del foro primario que resolviera sumariamente que no hubo despido bajo modalidad alguna, según la Ley Núm. 80-1976, *supra*; ni medió una acción de represalia, según la Ley Núm. 115-1991, *supra*.[10]

En cuanto al despido constructivo, sostuvo que no se configuraron los elementos para su constitución. Expuso que la Sra. Medina Flores no fue objeto de actos voluntarios ni injustificados; no se le impusieron condiciones onerosas con el propósito de llevarla a renunciar; y tampoco fue objeto de traslados, de persecución ni hostigamiento laboral. Adujo que, en cambio, ella disfrutó de beneficios salariales y marginales; aumentos salariales; y ofertas de promoción.

---

[10] *Íd.*, Entrada Núm. 75.

Respecto a la reclamación de represalias, HPM alegó que la Sra. Medina Flores no participó de una actividad protegida dentro de los parámetros y ante los foros establecidos por ley. Específicamente, planteó que las supuestas actuaciones del Sr. Miranda ocurrieron del 2015 al 2016; el Sr. Miranda fue despedido alrededor del 2017; y la Sra. Medina Flores renunció en agosto del 2018. Por dichas razones, planteó que esos hechos eran remotos entre sí y no podía establecerse un nexo causal entre estos y las supuestas represalias que señaló la Sra. Medina Flores.

Por último, respecto a la reclamación de incumplimiento de contrato, HPM arguyó que no surgió prueba documental alguna sobre la aceptación de la Sra. Medina Flores con relación a la oferta de empleo del 10 de mayo de 2017, aunque dicha propuesta solicitaba que contestara su parecer por escrito.

Por su parte, la Sra. Medina Flores presentó una *Oposición a Solicitud de Sentencia Sumaria* el 4 de enero de 2023 en la que suplicó del TPI que declarara No Ha Lugar la solicitud de sentencia sumaria de HPM.[11] Expuso que existía controversia sobre (1) si su renuncia constituyó un despido constructivo, al amparo de la Ley Núm. 80-1976, *supra*; y (2) si su despido constructivo obedeció a las represalias que sufrió al participar de la investigación interna sobre

---

[11] *Íd.*, Entrada Núm. 84.

la queja de la Sra. Galletti y al acudir a la Corporación del Fondo del Seguro del Estado.

En contraposición, el 25 de enero de 2023, HPM sometió una *Réplica a Oposición a Sentencia Sumaria* donde expuso que la Sra. Medina Flores no logró probar que los hechos esenciales estaban en controversia.[12]

Luego de varios asuntos procesales, el TPI emitió una *Sentencia Sumaria* el 5 de agosto de 2025.[13] Por medio de esta, declaró Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por HPM, y dictaminó No Ha Lugar la *Oposición a solicitud de sentencia sumaria* radicada por la Sra. Medina Flores. Consecuentemente, desestimó con perjuicio la *Querella* de epígrafe.

Inconforme, la Sra. Medina Flores presentó ante nos su *Apelación* el 18 de agosto de 2025, y planteó la comisión de los siguientes errores:

> Desestimar la causa de acción por incumplimiento de contrato en cuanto al ascenso y aumento de contrato, aduciendo que el contrato no quedó perfeccionado, a pesar de que conforme al testimonio de la apelante en su deposición esta declaró que aceptó la oferta, y luego la nueva directora lo puso en *hold*, trabándose así una controversia sobre el particular.
>
> Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que desestimó todas las reclamaciones de la apelante, a pesar de existir controversias de hechos esenciales respecto al

---

[12] *Íd.*, Entrada Núm. 86.
[13] *Íd.*, Entrada Núm. 102.

incumplimiento de contrato, las represalias en el empleo y el despido constructivo.

Determinar que la participación de la apelante en la investigación interna relacionada a la queja presentada en su contra por Galletti y el seguimiento e insistencia de la apelante para conocer los resultados de esta no constituyó una actividad protegida por la Ley Núm. 115-1991.

Determinar que la apelante no logró establecer la proximidad temporal de su despido que compruebe la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa.

Concluir erróneamente que la apelante no demostró un despido constructivo, a pesar de que un análisis objetivo de los hechos expuestos por ella en su oposición a sentencia demuestran que a raíz de su participación en la investigación sobre la querella presentada por Galletti y el seguimiento e insistencia de la apelante para conocer los resultados, la apelante fue objeto de acciones adversas por parte de la apelada, en una magnitud tal que la llevaron a renunciar a su empleo para proteger su salud emocional.

Por su parte, el 27 de agosto de 2025, HPM radicó un *Alegato en Oposición de la Parte Apelada*. En lo pertinente, adujo que no existía controversia en cuanto al alegado incumplimiento de contrato ni estaban presentes los elementos requeridos para la configuración de las causas de acción por despido constructivo y represalias.

Con el beneficio de la postura de las partes, nos encontramos en posición para discutir el derecho aplicable.

**II.**

**A.**

La solicitud de sentencia sumaria es un mecanismo procesal que faculta la ágil disposición de los casos sin la celebración de un juicio, siempre que no existan hechos materiales en controversia. *Cooperativa de Seguros Múltiples de Puerto Rico y Popular Auto, LLC v. Estado Libre Asociado de Puerto Rico,* 2025 TSPR 78; *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024). Esta solicitud puede ser presentada a favor de la parte reclamante o a favor de la parte contra quien se reclama. Reglas 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1 y R. 36.2.

A tenor con la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), procede dictar una moción de sentencia sumaria "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente". Véase, además, *Birriel Colón v. Supermercado Los Colobos,* 213 DPR 80, 91 (2023); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015). Para ello, es necesario que la parte promovente establezca su derecho con claridad y demuestre que no existe controversia sustancial o real

respecto a algún hecho material. *Birriel Colón v. Supermercado Los Colobos, supra*; *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. En esa misma línea, nuestro más alto foro ha establecido que un hecho material es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110 (Énfasis suprimido); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Aun así, el hecho de que una parte presente una moción de sentencia sumaria no garantiza que haya que resolverla a su favor, una vez determinada su procedencia. *Ramos Pérez v. Univisión, supra*, págs. 213-214.

Por otro lado, la parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*, pág. 90; *Fernández Martínez v. RAD-MAN San Juan III-D*, LLC, 208 DPR 310, 334, 336-337 (2021). Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones. *Birriel Colón v. Supermercado Los Colobos, supra*, pág. 90; *Ramos Pérez v. Univisión, supra*, pág. 215. Aun así, aunque no se presente prueba para controvertir la evidencia presentada, ello tampoco conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos,*

*supra,* pág. 90; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC,* *supra,* pág. 337. Lo anterior, pues la existencia de una controversia de hecho derrota la moción de sentencia sumaria siempre que cause en el tribunal "una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012).

Cónsono con lo expuesto, es meritorio reiterar el estándar de revisión que este Tribunal debe seguir al momento de revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

En primer lugar, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra,* pág. 115. En otras palabras, se aplican los mismos criterios que la Regla 36 de Procedimiento Civil, *supra,* R. 36, le exige al foro *a quo. Meléndez González et al. v. M. Cuebas, supra,* pág. 115. Sin embargo, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. A pesar de ello, la revisión por parte de este Tribunal es *de novo* y debemos examinar el expediente de la forma más favorable hacia la parte que se opuso a la moción de sentencia sumaria, "llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas, supra,* pág. 118.

Segundo, al encontrarnos en la misma posición que el foro *a quo,* debemos revisar que tanto la petición de sentencia sumaria

como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas, supra,* pág. 118.

Bajo el tercer eslabón, nuestro Tribunal debe examinar si en realidad existen hechos materiales en controversia. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

Cuarto y último, si este Tribunal encuentra que los hechos materiales están incontrovertidos, debemos revisar *de novo* si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas, supra*, pág. 119.

**B.**

La Ley Núm. 80-1976, *supra*, protege a los empleados de actuaciones arbitrarias por parte de los patronos al disponer remedios económicos que desalientan los despidos injustificados. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 770-771 (2022); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015). El Artículo 1 de la Ley Núm. 80-1976, *supra*, sec. 185a, expone que todo empleado que trabaja para un patrono mediante remuneración, sin tiempo determinado, y es despedido sin

justa causa, tiene derecho a recibir de su patrono indemnización por el despido. *Romero v. Cabrer Roig*, 191 DPR 653, 650 (2014); *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 949-950 (2011).

Este resarcimiento se conoce como la mesada y "constituye un remedio exclusivo disponible para los empleados despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despido". *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra*, pág. 771; *León Torres v. Rivera Lebrón*, 204 DPR 20, 36-37 (2020). "Como regla general, ante una conducta de un patrono, prevista y sancionada por una legislación especial de índole laboral, el empleado sólo tendrá derecho al remedio que dicha ley disponga, sin poder acudir al Art. 1802 del Código Civil". *Santini Rivera v. Serv. Air, Inc.*, 137 DPR 1, 16 (1994); *Santiago Nieves v. Braulio Agosto Motors*, 197 DPR 369, 385 (2017). Sin embargo, la exclusividad de remedios estatutarios no excluye la responsabilidad civil de un patrono ante conducta torticera en la que incurriere por otros motivos que no sean la mera violación de una disposición de las leyes laborales. *Soc. de Gananciales v. Royal Bank de P.R.*, 145 DPR 178, 192-193 (1998). En otras palabras, un empleado puede acudir a los preceptos generales de responsabilidad civil extracontractual bajo el Artículo 1802 del *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), 31 LPRA ant. sec. 5141,

contra cualquier persona que haya infringido su deber de actuar, siempre que una ley especial no lo prohíba. *Santiago Nieves v. Braulio Agosto Motors, supra,* pág. 386. Ello se ampara en el principio de evitar doble compensación cuando un estatuto laboral concede a un empleado un remedio. *Santiago Nieves v. Braulio Agosto Motors, supra,* pág. 385. Por ende, "si la ley de índole laboral sanciona la conducta imputada y confiere un remedio al empleado agraviado, no 'aceptar[emos] la tesis de que el legislador dejó abierta la puerta a la utilización de algún otro remedio o causa de acción, provista por alguna ley general' ". *Santiago Nieves v. Braulio Agosto Motors, supra,* pág. 386 (Énfasis suprimido en el original); *SLG Pagán-Renta v. Walgreens,* 190 DPR 251, 260 (2014).

Ahora bien, no existe una prohibición absoluta en contra del despido de un empleado, pues este puede ser despedido si existe justa causa. *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 230 (2015); *Romero v. Cabrer Roig, supra,* pág. 651. A pesar de que la Ley Núm. 80-1976, *supra,* no define lo que constituye despido injustificado, el estatuto dispone ciertas instancias en las que se justifica el despido de un empleado. Estas instancias se fundamentan en la conducta del empleado y en las razones de índole empresarial. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra,* págs. 771-772. Se entiende como justa causa para el despido aquella que no esté motivada por razones legalmente prohibidas,

que no sea por mero capricho del patrono, al igual que "aquellas razones que afecten el buen y normal funcionamiento de un establecimiento". Artículo 2 de la Ley Núm. 80-1976, *supra,* sec. 185b. No obstante, estas circunstancias de justa causa constituyen meros ejemplos de incidencias asociadas a un despido, pues el estatuto no puede prever el universo de instancias que pueden surgir en el trabajo y que desemboquen en la cesantía del empleado. *León Torres v. Rivera Lebrón, supra,* pág. 38; *SLG Torres-Matundan v. Centro Patología, supra,* pág. 930.

Bajo la Ley Núm. 80-1976, *supra,* el término despido "es amplio y no se limita estrictamente a la gestión concreta de un patrono de prescindir de los servicios de un empleado". *León Torres v. Rivera Lebrón, supra,* pág. 38 (Énfasis suprimido); *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 907 (2011). Se entiende por despido, además de la cesantía de un empleado, "la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra". Artículo 5 de la Ley Núm. 80-1976, *supra,* sec. 185e. En otras palabras, el empleado se siente tan incómodo con la situación laboral que no tiene otro remedio que abandonarlo. Por tal razón, en el despido constructivo o tácito el patrono fuerza al empleado a

retirarse del trabajo. *León Torres v. Rivera Lebrón, supra*, pág. 38; *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 907.

Para poder establecer una reclamación de despido constructivo "no basta con cualquier molestia o condición antipática en el empleo y, cuando se trate de vejámenes y humillaciones, éstos deben ser de magnitud sustancial". *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 908. El ambiente laboral debe tornarse intolerable a un nivel que la única alternativa razonable para el empleado afectado sea renunciar. *León Torres v. Rivera Lebrón, supra,* pág. 39. De este modo, " 'no puede utilizarse inflexiblemente por los obreros, cuando se encuentran en cualquier circunstancia laboral estresante. Por tal razón, sólo procede en aqu[e]llas instancias donde la prueba demuestre, mediante inferencia razonable, que la única alternativa del empleado es abandonar su empleo' ". *León Torres v. Rivera Lebrón, supra*, pág. 39 (*citando a* C. Zeno Santiago y V.M. Bermúdez Pérez, *Tratado de derecho del trabajo*, San Juan, Pubs. JTS, 2003, T. I, págs. 101–102). En fin, la intensidad y el alcance de la conducta del patrono se examina desde una óptica objetiva, por lo que se debe evaluar "si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono". *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 908.

Por último, la Ley Núm. 2-1961, *supra*, se desarrolló con el propósito de establecer un procedimiento sumario para aquellos "casos de reclamaciones de obreros y empleados contra sus patronos por servicios prestados". La Asamblea Legislativa acortó los términos y condiciones propios de un proceso ordinario, y, de esta forma, se fomenta una consideración y adjudicación rápida de las querellas radicadas por estos. *Collazo Muñiz v. New Fashion World Corporation*, 2025 TSPR 22; *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194, 206 (2021). Sobre este procedimiento, nuestro máximo foro expresó que:

> [T]anto los tribunales como las partes deben respetar: (1) los términos relativamente cortos dispuestos en el estatuto para contestar la querella; (2) los criterios estrictos para conceder una prórroga para contestar la querella; (3) el mecanismo especial que flexibiliza el emplazamiento del patrono, y (4) entre otras particularidades provistas por la ley, las limitaciones en el uso de los mecanismos de descubrimiento de prueba. De no hacerlo, el procedimiento se convertiría en ordinario, lo cual sería incompatible tanto con el mandato legislativo de diligencia en el dictamen judicial, como con su carácter reparador. *Lucero v. San Juan Star*, supra.
>
> *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 929 (2008).

### C.

Por otro lado, la Ley Núm. 115-1991, *supra*, se aprobó con el objetivo de proteger a todo empleado que sea despedido, amenazado u objeto de discrimen en su empleo o cargo, por haber ofrecido

testimonio ante un foro administrativo, judicial o legislativo. *Cordero Jiménez v. UPR*, 188 DPR 129, 135-136 (2013); véase además, *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656, 668-669 (2017). El término "empleado" es definido como "cualquier persona que preste servicios a cambio de salarios, o cualquier tipo de remuneración, mediante un contrato oral, escrito, explícito o implícito". Artículo 1(a) de la Ley Núm. Ley Núm. 115-1991, *supra*, sec. 194.

Además de prestar testimonio en los foros antedichos, el Artículo 2(a) de la Ley Núm. 115-1991, *supra*, sec. 194a, dispone lo siguiente:

> Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, <u>así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa,</u> o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

(Énfasis suplido).

Por su parte, el Artículo 2 (c) establece que un empleado tiene dos vías para establecer un caso al amparo de la Ley Núm. 115-1991, *supra*: (1) probar la violación mediante evidencia directa o

circunstancial, o (2) establecer la presunción *prima facie* de la ley. "Un empleado establece un caso prima facie o una presunción a su favor cuando prueba que: (1) participó en una actividad protegida por la ley y (2) subsiguientemente fue despedido, amenazado o discriminado en su empleo". *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 362 (2009). Tan pronto se establecen estos criterios, el patrono debe alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegarse y fundamentarse dicha razón, el empleado debe demostrar que la razón alegada por el patrono era un mero pretexto para el despido. Artículo 2(c) de la Ley Núm. 115-1991, *supra*, sec. 194b; *Rivera Menéndez* v. *Action Service*, 185 DPR 431, 446 (2012).

Respecto al segundo criterio para establecer un caso *prima facie*, nuestro Tribunal Supremo definió la palabra "subsiguiente" como aquel "acto '[q]ue sigue *inmediatamente* aquello que se expresa o sobreentiende' ". *Feliciano Martes* v. *Sheraton*, 182 DPR 368, 399 (2011) (Énfasis suplido en el original) (*citando a* Real Academia Española, *Diccionario de la Lengua Española*, 22ª ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 2101). Por lo tanto, al establecer un caso *prima facie*, "el empleado no se enfrentar[á] a un proceso probatorio oneroso, sino que bastar[á] su comprobación de que la acción adversa que experimentó ocurrió al *poco tiempo* de haber incurrido en la alegada actividad protegida". *Feliciano Martes* v.

*Sheraton, supra,* págs. 399-400 (Énfasis suplido en el original);

*Velázquez Ortiz* v. *Mun. De Humacao, supra,* pág. 671.

No empece lo anterior, no todo caso se configura dentro de un espacio temporal que pueda catalogarse como de *poco tiempo,* sino que:

> Ante tales circunstancias, la proximidad temporal, como inferencia de causalidad, resulta insuficiente, por lo que se requiere entonces que el empleado constate elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa. Así, el trabajador deberá presentar evidencia que establezca: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso.
>
> Claro está, hacemos la salvedad de que el análisis previamente esbozado solo satisface cuando el empleado establece un caso prima facie por represalias. Ello, pues una vez el patrono logre articular una razón no represiva para la acción adversa que tomó, se requerirá del empleado que, por preponderancia de la prueba, se valga de factores adicionales a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo.

*Feliciano Martes* v. *Sheraton, supra,* pág. 400.

## D.

En nuestra jurisdicción, las relaciones que nacen de los contratos se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda. Oriental Bank v. Perapi,* 192 DPR 7, 15

(2014). Por un lado, la autonomía de la voluntad dispone que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Artículo 1207 del Código Civil de 1930, *supra*, ant. sec. 3372; *Oriental Bank v. Perapi*, *supra*, pág. 15. Por el otro, el principio de *pacta sunt servanda* expone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Artículo 1044 del Código Civil de 1930, *supra*, ant. sec. 2994; *López v. González*, 163 DPR 275, 281 (2004).

Ahora bien, "[l]os contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Artículo 1210 del Código Civil de 1930, *supra*, ant. sec. 3375. Para que un contrato se considere perfeccionado, deben concurrir tres (3) elementos; a saber, el consentimiento de los contratantes, el objeto y la causa. Artículo 1213 del Código Civil de 1930, *supra*, ant. sec. 3391. El consentimiento "se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio". *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 229 (2007). En cuanto al objeto, este debe tratarse de una cosa determinada en cuanto a su especie. Artículo 1225 del Código Civil de 1930, *supra*, ant. sec. 3423. Asimismo, la

causa de cada contratante es "la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del bienhechor". Artículo 1226 del Código Civil de 1930, *supra*, ant. sec. 3431.

Sin embargo, con frecuencia, las partes contratantes "someten el cumplimiento de la obligación a la realización futura de un hecho o a la llegada de determinado día". *López v. González, supra*, pág. 282. De esta forma, modifican la normalidad en el cumplimiento, ya que la regla general reconocida es la que solicita el cumplimiento de la obligación desde que esta se constituye. Reconociendo lo anterior, cabe hablar de las obligaciones puras, condicionales y a plazos. *López v. González, supra*, pág. 282. La condicionales son las que su eficacia depende de un acontecimiento incierto y bajo esta, "la adquisición de los derechos, así como la resolución o pérdida de los ya adquiridos, dependerá del acontecimiento que constituya la condición". Artículo 1067 del Código Civil de 1930, *supra*, ant. sec. 3042; *López v. González, supra*, pág. 282. "[D]entro de las obligaciones condicionales se encuentran las que están sujetas a una condición suspensiva, a cuyo cumplimiento se subordinan los efectos de un acto jurídico por voluntad de los contratantes". *López v. González, supra*, pág. 282. Es decir, " *'[s]i la condición se cumple, la obligación surge …. Si … no*

*se realiza, el vínculo de derecho no llega a aparecer' "*. *López v. González, supra,* pág. 283 (Énfasis suplido en el original) (*citando a* J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ª ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 1, pág. 367).

### III.

A juicio del foro primario, procedía la desestimación de las tres (3) reclamaciones de epígrafe radicadas por la Sra. Medina Flores contra HPM; a saber, incumplimiento de contrato, despido injustificado y represalias, bajo el procedimiento sumario.

Sobre el incumplimiento de contrato, el foro primario determinó que la Sra. Medina Flores no presentó prueba de haber aceptado por escrito la *Propuesta Económica Administración de Culebra* del 10 de mayo de 2017, cuando se le requirió. Por ende, resolvió que ella no cumplió con los términos de la propuesta y, en su consecuencia, no se perfeccionó el contrato de empleo, conforme al Art. 1210 del Código Civil de 1930, *supra,* ant. sec. 3375. El TPI también determinó que no existía controversia en cuanto a la renuncia de la Sra. Medina Flores y resolvió que la Sra. Medina Flores no demostró los elementos para establecer que la misma constituyó un despido constructivo, al amparo de la Ley Núm. 80-1976, *supra.*

Por último, el foro *a quo* dictaminó que resultaba insuficiente la proximidad temporal entre la actividad protegida; es decir, la carta

que remitió la Sra. Medina Flores en el año 2015 con relación a las solicitudes del Sr. Miranda para que ella realizara funciones como técnico o auxiliar de farmacia sin licencia; y la acción adversa de HPM; a saber, colocar en "*hold*" el puesto administrativo respecto al Municipio de Culebra en el año 2017. También determinó que no fueron acciones adversas la continuación de la investigación sobre la queja de la Sr. Galletti, la reubicación de la Sra. Galletti a otro puesto, y el relevo de la Sra. Medina Flores de sus responsabilidades relacionadas al Programa de Descuento y al Programa de Respuesta al Zika. Por el contrario, resolvió que las primeras dos constituyeron acciones empresariales válidas y la última no podía considerarse una acción adversa, pues la Sra. Medina Flores se quejó de estar sobrecargada de funciones.

Insatisfecha, la Sra. Medina Flores sostuvo que el foro primario incurrió en cinco planteamientos de error. Primero, adujo que este incidió al desestimar la causa de acción por incumplimiento de contrato, cuando, conforme a su testimonio, declaró haber aceptado la oferta, y posteriormente, la licenciada Rivera puso en *hold* su cambio de puesto. Como segundo señalamiento de error, indicó que no procedía declarar Ha Lugar la solicitud de sentencia sumaria presentada por HPM y, consecuentemente, desestimar todas las reclamaciones, toda vez que existía controversia sobre hechos esenciales respecto al incumplimiento de contrato, las

represalias y el despido constructivo. Tercero y cuarto, la Sra. Medina Flores arguyó que erró el foro primario al no establecer la proximidad temporal de su despido y al determinar que su participación en la investigación interna relacionada a la queja de la Sra. Galletti y el seguimiento para conocer los resultados de la misma, no constituyeron una actividad protegida al amparo de la Ley Núm. 115-1991, *supra*. Como quinto y último error, expuso que el foro primario incidió al indicar que ella no demostró la ocurrencia de un despido constructivo cuando fue objeto de acciones adversas por parte de HPM que la llevaron a renunciar.

Por su parte, HPM solicitó que se confirmara la determinación apelada.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario incurrió en el tercer señalamiento, más no cometió el resto. Sin embargo, dicho error no afectó la determinación apelada. Veamos por qué.

Como pormenorizamos anteriormente, y en virtud de *Meléndez González et al. v. M. Cuebas*, *supra*, primero revisamos *de novo* el petitorio sumario junto a sus anejos, al igual que los escritos de la oposición conforme a los criterios de la Regla 36 de Procedimiento Civil, *supra*. De igual modo, debemos examinar que tanto la petición de sentencia sumaria como su oposición

cumplieran con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

Precisamente, luego de un examen cuidadoso de la *Oposición a Solicitud de Sentencia Sumaria* presentada por la Sra. Medina Flores, colegimos que dicho escrito cumple sustancialmente con los requisitos de forma de la Regla 36.3(b) de Procedimiento Civil, *supra*.[14] Aunque, notamos que HPM no incluyó en la *Solicitud de Sentencia Sumaria* una exposición breve de las alegaciones de las partes, según requerido por el inciso (a)(1) de la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3(a)(1),[15] somos de la opinión que no procedería revertir la determinación apelada de forma automática.

Habiendo atendido los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria, debemos evaluar como tercer paso si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer concretamente cuáles son los hechos materiales que están en controversia y cuáles están incontrovertidos.

Del expediente del caso se desprende que las determinaciones de hechos formuladas por el TPI surgen incontrovertidamente del

---

[14] *Íd.*, Entrada Núm. 84.
[15] *Íd.*, Entrada Núm. 75.

récord. Tanto en la solicitud de sentencia sumaria como en la oposición a esta, surge prueba fehaciente para demostrar los hechos materiales a las reclamaciones de marras, entre estos, deposiciones, declaraciones juradas y otra prueba documental.[16] Recuérdese que, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra,* pág. 44. De esta forma, dicha parte no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414 (2013); *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). Por tal razón, el foro primario no incurrió en el <u>segundo</u> señalamiento de error.

No existiendo hechos en controversia, pasemos al cuarto y último eslabón; es decir, nos toca revisar de *novo* si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas, supra,* pág. 119.

Según explicamos en la sección previa, para que un contrato se considere perfeccionado, deben concurrir tres (3) elementos; a saber, el consentimiento de los contratantes, el objeto y la causa. Artículo 1213 del Código Civil de 1930, *supra*, ant. sec. 3391.

---

[16] *Íd.*, Anejos 1-18; *Íd.*, Entrada Núm. 84, Anejos 1-27.

Conforme a la autonomía de la voluntad, "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Artículo 1207 del Código Civil de 1930, *supra*, ant. sec. 3372; *Oriental Bank v. Perapi, supra*, pág. 15. En el caso de las obligaciones condicionales, "la adquisición de los derechos, así como la resolución o pérdida de los ya adquiridos, dependerá del acontecimiento que constituya la condición". Artículo 1067 del Código Civil de 1930, *supra*, ant. sec. 3042; *López v. González, supra*, pág. 282. "[D]entro de las obligaciones condicionales se encuentran las que están sujetas a una condición suspensiva, a cuyo cumplimiento se subordinan los efectos de un acto jurídico por voluntad de los contratantes". *López v. González, supra*, pág. 282. Por lo tanto, " *'[s]i la condición se cumple, la obligación surge …. Si … no se realiza, el vínculo de derecho no llega a aparecer'* ". *López v. González, supra*, pág. 283 (Énfasis suplido en el original) (*citando a* Manresa y Navarro, *op. cit.,* pág. 367).

El 10 de mayo de 2017, la Directora Ejecutiva de Recursos Humanos, la señora Luzdy Rivera Marrero (Sra. Rivera Marrero), y la Directora Ejecutiva, la licenciada Julia Vélez Sánchez, le cursaron a la Sra. Medina Flores una *Propuesta Económica Administración de Culebra* con un salario base de $53,000.00 y estipendio mensual de

$300.00, al igual que gastos de hospedaje y pasajes.[17] Se desprende de dicha carta que estas le advirtieron a la Sra. Medina Flores que, "[d]e usted aceptar la misma, favor de contestar por escrito y entregar a nuestra oficina para el trámite correspondiente".[18] En otras palabras, aunque la Sra. Medina Flores sostuvo en su deposición que le brindó seguimiento a esta propuesta,[19] no presentó prueba para demostrar que la aceptó por escrito, condición necesaria para la formalización de la oferta. Por ende, al no realizarse la aceptación por escrito, el vínculo de derecho no se creó, y, en su consecuencia, HPM no incumplió con contrato alguno. Por tal razón, el foro primario no incurrió en el <u>primer</u> señalamiento de error.

Por otro lado, tal como expusimos en la sección anterior, para poder establecer una reclamación de despido constructivo "no basta con cualquier molestia o condición antipática en el empleo y, cuando se trate de vejámenes y humillaciones, éstos deben ser de magnitud sustancial". *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 908. Así, esta reclamación " 'no puede utilizarse inflexiblemente por los obreros, cuando se encuentran en cualquier circunstancia laboral estresante. <u>Por tal razón, sólo procede en aqu[e]llas instancias donde la prueba demuestre, mediante inferencia razonable, que la</u>

---

[17] *Íd.*, Entrada Núm. 75, Anejo 12.
[18] *Íd.*
[19] *Íd.*, Entrada Núm. 84, Anejo 1, pág. 118, L 10-25; *Íd.*, pág. 119, L 1-7.

única alternativa del empleado es abandonar su empleo' ". *León Torres v. Rivera Lebrón, supra*, pág. 39 (*citando a* Zeno Santiago y Bermúdez Pérez, *op. cit.*, págs. 101–102) (Énfasis suplido). Es decir, se debe evaluar "si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono". *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 908.

Ciertamente, de la carta del 30 de agosto de 2018 realizada por la Sra. Medina Flores y cursada a la Sra. Rodríguez, se desprende que ella renunció. Específicamente, la Sra. Medina Flores expuso que "[e]sta comunicación, tiene el objetivo de presentar la dimisión a mi puesto, por razones ajenas a mi voluntad, como Gerente de Relaciones con la Comunidad".[20] Por tal razón, en el caso de marras no existe controversia en cuanto a que no ocurrió un despido, sino que la Sra. Medina Flores renunció. Sin embargo, amerita examinar si esa renuncia fue la única alternativa razonable que le restaba a la Sra. Medina Flores.

Previo a su renuncia, la Sra. Medina Flores obtuvo un aumento salarial de $56,000.00 anuales, el cual se iba a hacer efectivo el 19 de febrero de 2018,[21] y así lo admitió ella en su *Oposición a Solicitud de Sentencia Sumaria*.[22] De igual modo, la Sra. Medina Flores expuso en su deposición que la relevaron de la

---

[20] *Íd.*, Entrada Núm. 75, Anejo 17.
[21] *Íd.*, Entrada Núm. 84, Anejo 11.
[22] *Íd.*, pág. 22.

responsabilidad relacionada al Programa de Respuesta ante el Zika y al Programa de Descuento.[23] Sin embargo, tanto de la *Querella*[24] como de la *Oposición a Solicitud de Sentencia Sumaria*[25] surge que la Sra. Medina Flores se quejó constantemente de tener una sobrecarga de funciones y responsabilidades onerosas de empleo desde el 2015, asunto que reiteró en los años 2016 y 2017.[26] Además, la Sra. Medina Flores no recibió un aumento salarial, sino dos, más una compensación especial. Específicamente, obtuvo un aumento salarial por la cantidad de $42,800.00 anuales, efectivo el 19 de septiembre de 2016.[27] De igual modo, HPM le otorgó a la Sra. Medina Flores una compensación especial de $3,000.00 por su desempeño durante la emergencia de los huracanes Irma y María en el año 2017.[28] Finalmente, HPM le concedió un aumento de salario por la suma de $56,000.00 efectivo el 19 de febrero de 2018.[29] Por ende, la Sra. Medina Flores no demostró que su renuncia constituyera un despido constructivo. En su consecuencia, el TPI no incidió en el <u>quinto</u> error.

Por estar íntimamente relacionados, discutiremos los errores tres y cuatro en conjunto.

---

[23] *Íd.*, Anejo 1, pág. 60, L 11-17.
[24] *Íd.*, Entrada Núm. 1, págs. 2-3.
[25] *Íd.*, Entrada Núm. 84, págs. 3-4, 21-22.
[26] Véase además, *Íd.*, Entrada Núm. 75, Anejo 5.
[27] *Íd.*, Entrada Núm. 102, págs. 9-10 (Determinación de Hecho Incontrovertido #18).
[28] *Íd.*, pág. 13 (Determinación de Hecho Incontrovertido #37).
[29] *Íd.*, pág. 14 (Determinación de Hecho Incontrovertido #39).

Expusimos en la sección anterior que "[u]n empleado establece un caso *prima facie* o una presunción a su favor cuando prueba que: (1) participó en una <u>actividad protegida</u> por la ley y (2) <u>subsiguientemente</u> fue despedido, amenazado o discriminado en su empleo". *S.L.G. Rivera Carrasquillo v. A.A.A.*, *supra*, pág. 362. (Énfasis suplido). Sobre la actividad protegida, el Artículo 2(a) de la Ley Núm. 115-1991, *supra*, sec. 194a, dispone lo siguiente:

> Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, <u>así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa,</u> o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

(Énfasis suplido).

Según surge del expediente ante esta Curia, en marzo del 2018, la Sra. Galletti presentó una queja verbal contra la Sra. Medina Flores y ante el Departamento de Recursos Humanos con relación a la amonestación que la Sra. Medina Flores le impartió en dicha fecha; y sobre las alegaciones de discrimen de edad ocasionadas por la Sra. Medina Flores.[30] Igualmente, en <u>mayo de</u>

---

[30] *Íd.*, Entrada Núm. 84, Anejo 12, pág. 33, L 24-25; pág. 34, L 1-11; pág. 36, L 1-10; pág. 39, L 5-18; pág. 58, L 1-22.

2018, la Sra. Galletti acudió a dicho departamento para realizar un resumen verbal de todo.[31] Ese mismo mes, la Sra. Rodríguez le informó a la Sra. Medina Flores que se encontraba bajo investigación,[32] y, según el testimonio de la Sra. Medina Flores, ella le expresó a la Sra. Rodríguez lo siguiente con relación a la queja de la Sra. Galletti:

> R Que no lo podía creer, que era falso. E inmediatamente me paré y le dije a Yaitza que si me daba cinco minutos para producir todos los informes mensuales que me daba tanto Brenda Ramos como Jessica Galletti, en relación a sus funciones. Porque también otra alegación era que yo le quité parte de sus responsabilidades para dárselas a Brenda Ramos.[33]

Sin embargo, el TPI determinó lo siguiente respecto a la actividad protegida:

> De la evidencia presentada se desprende que el 23 de junio de 2015 fue cuando Medina Flores le remitió la carta al Sr. Miranda Padilla dejándole saber su total oposición a que se utilizara a un empleado no licenciado como técnico o auxiliar de farmacia. No obstante, no fue hasta el 2017 que a Medina Flores se le ofrece el puesto al que ella alega haber sido puesto en "*hold*". Además de su renuncia, no fue hasta el 30 de agosto de 2018 que Medina Flores presenta su renuncia definitiva, a más de un año que el Sr. Miranda Padilla dejara de trabajar para HPM Foundation y no incidieran en las labores de Medina Flores. Por consiguiente, no se puede colegir una proximidad temporal entre la referida renuncia por las condiciones laborales que alegadamente la indujeron a renunciar y el "*hold*" de Medina Flores con la referida actividad protegida.

---

[31] *Íd.*, pág. 48, L 9-18.
[32] *Íd.*, Anejo 1, pág. 67, L 2-23.
[33] *Íd.*, L 17-23.

> Por consiguiente, no puede colegirse que Medina
> Flores haya sido despedida, amenazada o discriminada
> con relación a los términos, condiciones, compensación,
> ubicación, beneficios o privilegios de su empleo por este
> testimonio, expresión o información presentada
> internamente en contra del Sr. Miranda Padilla.[34]

(Énfasis suplido).

De lo anterior se puede desprender que el foro primario incurrió en el tercer señalamiento de error, pues sostuvo que la actividad protegida en la cual participó la Sra. Medina Flores fue la carta remitida al Sr. Miranda en el año 2015, en lugar de la participación de la Sra. Medina Flores en la investigación relacionada a la queja de alegado discrimen de edad radicada en su contra.

Bajo el cuarto señalamiento de error, la Sra. Medina Flores expuso que el foro primario erró al determinar que ella no logró establecer la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa. Previo a atender este planteamiento de error, es meritorio, no obstante, resolver si HPM incurrió en una acción adversa contra la Sra. Medina Flores. Según el Artículo 2(a) de la Ley Núm. 115-1991, *supra*, sec. 194a, las acciones adversas consisten en "despedir, amenazar o discriminar" contra el empleado. Además, pueden constituir acciones

---

[34] *Íd.*, Entrada Núm. 102, págs. 42-43.

disciplinarias adversas. *Feliciano Martes* v. *Sheraton, supra,* pág. 400.

Por su lado, la Sra. Medina Flores admitió como hecho incontrovertido que ella afirmó, mediante su deposición, que aproximadamente un mes luego de que le informaran al Departamento de Recursos Humanos de la investigación sobre la queja de la Sra. Galleti, a quien ella supervisaba, reubicaron a esta última al Programa de Salud Escolar, lo cual la Sra. Medina Flores pudo interpretar como un "premio" para la Sra. Galletti.[35] De igual modo, la Sra. Medina Flores alegó como acción adversa la reubicación de la Sra. Ramos a otra área, al igual que el relevo de sus responsabilidades con relación al Programa de Descuento y al Programa de Respuesta al Zika.

De otra parte, HPM sustentó su petitorio sumario, con deposiciones incluyendo la de la Sra. Galletti, de la cual se desprende que:

> R. Cuando llega... Teníamos una compañera Brenda Ramos, que era la educadora en salud, Jormalyz comienza a darle prácticamente todas mis funciones, mis responsabilidades a Brenda, y yo le reclamaba que por qué, si yo estaba allí. Y, pues, nada, a veces decía... hizo inclusive una vez alusión a que yo no tenía idea de las certificaciones y la preparación académica que tenía Brenda que no tenía yo. Así es que, pues era uno de los reclamos que yo le hacía, el quitarme mi trabajo para entonces darle a otra compañera.

---

[35] *Íd.*, Entrada Núm. 84, pág. 16.

P ¿Y Brenda era menor o mayor que usted?

R Menor.

P ¿Otro compañero de trabajo que usted entienda que le estaban dando las funciones suyas, si alguno, aparte de Brenda?

R No.[36]

HPM adujo que la reubicación de la Sra. Galletti a otra unidad administrativa fue tomada como una medida gerencial válida, ante su queja de discrimen-la cual alegadamente envolvió a la Sra. Ramos-, y que la Sra. Medina Flores no fue objeto de ninguna reprimenda verbal o escrita relacionada al seguimiento que realizó de la investigación de la querella de la Sra. Galletti. Además, acompañó el *HPM Foundation Inc. Manual de Empleado*, el cual poseía una política sobre el discrimen y el hostigamiento en el lugar de empleo.[37] Asimismo, HPM arguyó que "la apelante se quejaba y veía como una acción en su contra, lo que consideraba que era una sobrecarga de trabajo. Paradójicamente, cuando la apela[da] le alivió la carga de trabajo liberándola de la responsabilidad de dos programas, esta lo tomó como una represalia en su contra. Inexplicable de por si lo anterior".[38]

Puntualizamos que la Sra. Medina Flores no demostró cómo la acción adversa no fue una actuación empresarial considerando la

---

[36] *Íd.*, Anejo 12, pág. 58, L 1-16.
[37] *Íd.*, Entrada Núm. 75, Anejo 18, págs. 12-15.
[38] *Oposición de la parte apelada*, pág. 19.

política de HPM contra del discrimen y el hostigamiento. Si fuera poco, la Sra. Medina Flores se quejó constantemente de una sobrecarga de funciones y responsabilidades onerosas de empleo desde el 2015, asunto que reiteró en los años 2016 y 2017.[39] Sostuvo incluso la Sra. Medina Flores que, "[c]omo consecuencia de la cancelación unilateral de su nombramiento como Administradora Asociada de Vieques, **la apelante continuó con la misma sobrecarga de funciones** y las mismas condiciones onerosas de trabajo, pero sin aumento de salario ni ascenso".[40] (Énfasis suplido).

Por ende, la reubicación de las dos empleadas a otros puestos constituyó una actuación empresarial y, eliminarle a la Sra. Medina Flores la responsabilidad de los programas tampoco se trató de una acción adversa en el empleo. En su consecuencia, es inmeritorio atender el <u>cuarto</u> señalamiento de error. Ello pues, al resolver la inexistencia de una acción adversa no es necesario analizar si existió proximidad temporal, pues este ejercicio debe realizarse no solo ante la existencia de una actividad protegida, sino ante la presencia de una acción adversa en contra del empleado.

Por ende, a pesar del foro *a quo* haber incurrido en el tercer planteamiento de error tercero, ello no cambia la improcedencia de

---

[39] SUMAC, Entrada Núm. 75, Anejo 5; *Íd.*, Entrada Núm. 1, págs. 2-3; *Íd.*, Entrada Núm. 84, págs. 3-4, 21-22.
[40] *Apelación*, pág. 8.

la reclamación de represalias, conforme a la Ley Núm. 115-1991, *supra.*

## IV.

Por los fundamentos antes expuestos, confirmamos la *Sentencia Sumaria* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
